Hossein BERAHMAND, Petitioner,

v.

IMMIGRATION & NATURALIZATION SERVICE, Respondent.

No. 75–3524.

United States Court of Appeals, Ninth Circuit.

March 15, 1977.

* The Honorable William P. Gray, United States District Judge for the Central District of California, sitting by designation.

Harry R. Kraus, Portland, Or., submitted brief for petitioner.

Sidney I. Lezak, U. S. Atty., Portland, Or., Henry Petersen, Asst. Atty. Gen., Crim. Div., Dept. of Justice, Washington, D. C., Brian H. Simpson, Immigration & Nat. Service, San Francisco, Cal., Bernard S. Karmiol, Regional Counsel, Immigration & Nat. Service, San Pedro, Cal., Lyle H. Dahlin, Dist. Director, Immigration & Nat. Service, Portland, Or., B. Franklin Taylor, Acting Chief Govt. Regs., Dept. of Justice, James P. Morris, Robert E. Courtney, Washington, D. C., submitted brief for respondent.

Before DUNIWAY, CARTER and CHOY, Circuit Judges.

OPINION

DUNIWAY, Circuit Judge:

Berahmand, a citizen of Iran, entered this country in 1969, as a student. He married an American citizen, and on June 26, 1972, his wife filed a visa petition on his behalf to accord him preference as an immediate relative. Her petition was approved on July 20, 1972. In February, 1973, Berahmand filed an application for permanent resident status. After an interview with Immigration Examiner Luken, on October 25, 1973, his application was completed and sworn to, and apparently approved. An approval stamp appears on his INS Form I-181, which is the original record of lawful admission as a permanent resident.[1] *See* 2 Gordon and Rosenfield, *Immigration Law and Procedure,* § 6.17a (1976). Berahmand testified that the Immigration Examiner told him at the interview that his application was granted. Some marks, however, have been drawn through the approval stamp, and Berahmand had never received written notification of any approval of his application.

On December 2, 1974, Berahmand's wife, who was divorcing him, wrote to INS saying that she wished to withdraw her visa petition. On December 4, 1974, the District Director of INS notified the wife that approval of her visa application was revoked "as of the date of approval," and sent Berahmand a "decision" denying his application for status as a permanent resident.[2] Deportation proceedings were also instituted on that day because Berahmand had overstayed his authorized time in this country.

---

1. In a box designated "Date of Action," there appears a stamped entry reading as follows:

   U.S. Approved INS.
   Oct. 25, 1973
   DD   Albert Conversano, Jr.
   District   Portland, Oregon

The name of the District Director appears as a facsimile signature.

2. The decision was predicated entirely upon the wife's withdrawal of her petition, and merely assumed that Berahmand's application for adjustment of status had never been granted.

After a hearing, the Immigration Judge concluded that Berahmand was deportable because he had overstayed his time and his permanent resident application had never been approved. The Board of Immigration Appeals affirmed that decision. The issues on this appeal are whether Berahmand has sustained his initial burden of proving that he was granted an adjustment of status to that of a permanent resident, and if he has, whether the INS has overcome that prima facie showing.

■ The Form I–181 which was received in evidence records, on its face, the creation of permanent resident status on October 25, 1973. The approval stamp, however, as we have seen, has some marks drawn through it. The INS attorney explained, "Approval . . . was crossed out and no notice was ever mailed so it was cancelled before it was approved." The Immigration Judge accepted this explanation. An examination of the I–181 reveals that the marks did not deface the approval stamp or render it illegible. There is nothing, handwritten or otherwise, and no testimony, to show that the marks were intended to void the approval. There is no evidence as to when or by whom or why the marks were placed on the approval stamp. Thus the Form I–181 shows creation of permanent resident status in support of Berahmand's testimony. The marks do not speak for themselves, and do not justify a conclusion that approval was "crossed out" or "cancelled." The attorney's explanation is his own speculation, not evidence. We conclude that the Form I–181 established prima facie on Berahmand's behalf that he had been granted permanent resident status.

The burden of proof then shifted to the INS, and the issue becomes whether that burden has been met. In *Trias-Hernandez v. INS*, 9 Cir., 1975, 528 F.2d 366, the petitioner had entered the United States as an immigrant and permanent resident. He subsequently left and reentered two years later without inspection or entry documents. He was charged with being deportable under 8 U.S.C. § 1251(a)(2), and had the initial burden of showing lawful entry. We stated:

> To meet his statutory burden of showing lawful entry (8 U.S.C. § 1361) petitioner offered in evidence his 1958 visa and "green" card. The burden then shifted to respondent [INS] to show by *clear, convincing* and *unequivocal evidence* that petitioner was deportable. (emphasis added) 528 F.2d at 368.

In so holding, we followed *Woodby v. INS*, 1966, 385 U.S. 276, 286, 87 S.Ct. 483, 17 L.Ed.2d 362.

Here the INS argues that a memorandum in Berahmand's file, dated November 20, 1973, after the October 25 I–181 approval stamp, shows that there was an ongoing investigation of his admissibility to this country as a prerequisite to adjustment of his status, and thus by implication, that adjustment had not been granted. The purpose of the memorandum is by no means clear. It concerns a "bounced" check which the Immigration Examiner at the interview had asked Berahmand to "clear up," and it notes that no notice had been received that the matter had been settled. Apparently, on the basis of this problem, the Immigration Examiner questioned Berahmand's integrity, and whether he might have used fraud to obtain his original visa by misrepresenting his financial condition. However, the memorandum does not refer to the Form I–181 or the application for adjustment of status, and the INS never called the Examiner as a witness to clarify the ambiguity. Finally, the INS argues that because Berahmand did not receive any notice of the supposed granting of permanent resident status as required by 8 C.F.R. § 245.2(a)(4), the approval must never have been given.

■ In essence, all of this is speculation. The one thing that INS did not do was to call its own Examiner, Luken, to testify about what he did, what he told Berahmand, and why he did what he did. Counsel's speculations and arguments are not a substitute for the clear, convincing and unequivocal evidence that our *Trias-Hernandez* decision requires.

The decision is vacated and the case is remanded to INS for further proceedings consistent with this opinion.

JAMES M. CARTER, Circuit Judge, dissenting:

The majority appears to have turned the burden of proof around in this case. It is uncontested that at all times prior to the date on which the approval stamp was allegedly placed in the file, the petitioner was an alien in this country on student status. Any alien seeking an adjustment in his status has the burden of proof. 8 C.F.R. § 242.17(d); C. Gordon and H. Rosenfeld, Immigration Law and Procedure, § 7.7f(2) (Rev. ed. 1976). I believe this burden was never met. The judge of the Immigration Service made such a finding in ordering deportation, and I see no reason to disturb and this finding on appeal.

An INS Form I–181 is merely evidence of admission as a permanent resident. It hardly constitutes conclusive proof that any change in status has occurred. See *id.*, § 6.17a. Although a crossed-out approval stamp appears on this form, it was never signed by any official, as is the standard practice of the Immigration Service. Less than one month *after* permanent resident status was purportedly granted by this document, petitioner and an agent of the Immigration Service conferred on matters relating to his application for permanent status. This meeting is documented by a memorandum in the file.

Moreover, petitioner never received any notification of being granted permanent resident status—again standard practice of the Immigration Service. Quite to the contrary, petitioner was notified later that his application had been denied. Against all of this, we have only the crossed-out stamp on the I–181 form, and the unsupported assertion of petitioner that he was told he was granted permanent status.

The invalidation of the approval stamp, like the absence of any signature thereon, cannot be assumed to be a mistake of the Immigration Service. Indeed, this court must presume that they are regular, proper, and legal. *See, e. g., Atlas Life Insurance Co. v. N.L.R.B.*, 295 F.2d 327, 330 (10 Cir. 1961), *cert. denied*, 369 U.S. 818, 82 S.Ct. 830, 7 L.Ed.2d 785 (1962). As such, they are entitled to their logical inference—that no change in alien status was made. To my mind, the scanty evidence offered by the petitioner neither overcomes this inference nor satisfies his burden of proof.

I would AFFIRM.