Carmen **CORDON de RUANO**, Petitioner,

v.

**IMMIGRATION AND NATURALIZA-TION SERVICE**, Respondent.

No. 76–1546.

United States Court of Appeals, Ninth Circuit.

May 26, 1977.

Gary Silbiger, Los Angeles, Cal., argued for petitioner.

William D. Keller, U. S. Atty., Carolyn M. Reynolds, Asst. U. S. Atty., Los Angeles, Cal., argued for respondent.

Before CHAMBERS and WALLACE, Circuit Judges, and CRARY,* District Judge.

CHAMBERS, Circuit Judge:

## OPINION

Carmen Cordon de Ruano petitions for review of a decision of an Immigration Judge, affirmed by the Board of Immigration Appeals (BIA), that she is deportable under § 241(a)(2) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(2), for overstaying a temporary entry as a nonimmigrant visitor. We affirm.

On April 29, 1975, two INS officers appeared at petitioner's door seeking her husband, a subject of pending deportation proceedings. They identified themselves and petitioner asked them into the house. While in the house, the officers asked petitioner questions relating to her nationality and immigration status, and she produced a passport. The officers then requested petitioner to "go with them," but abandoned this request when they learned her child was sick. At no time did petitioner ask the officers to leave.

On June 18, 1975, the District Director issued an Order to Show Cause charging that petitioner was deportable for having overstayed a temporary admission as a nonimmigrant visitor. At the subsequent hearing, petitioner initially refused to answer any questions on the ground that her answers might incriminate her. The Immigration Judge overruled many of the Fifth Amendment objections, but petitioner, on the advice of counsel, refused to respond. The government then introduced a passport issued by the Guatemalan Government on October 19, 1966 in the name of Carmen Cordon de Oliva, petitioner's former married name. The original Order to Show Cause had been issued in that name, and petitioner stipulated at the hearing that the Order related to her. In addition, the passport contained a photograph which the Immigration Judge found to be "a good likeness" of petitioner. The passport which was admitted into evidence over petitioner's objections, indicated that the bearer had entered the United States on December 13, 1970 as a nonimmigrant visitor. It also indicated that Cordon de Oliva was a native and citizen of Guatemala.

Petitioner then attempted to establish that the passport had been seized illegally and therefore should be excluded from evidence. She recounted, under questioning by her counsel, the events of April 29, 1975, when the two officers came to her home. Petitioner testified that the officers had not given her any *Miranda* warnings. The government declined to call either of the officers, and the Immigration Judge denied petitioner's motion to have them called so that they could be "cross-examined." Petitioner was found deportable as charged by the Immigration Judge based on the passport and the lack of rebutting evidence presented by petitioner. The BIA, without the benefit of oral argument, affirmed this decision.

Petitioner first argues that the passport was inadmissible because it was

* The Honorable E. Avery Crary, District Judge for the Central District of California, sitting by designation.

obtained through an illegal "seizure," in violation of the Fourth Amendment, and therefore should have been suppressed. We find no merit in this contention. Although the INS may not stop or detain persons to question them about their citizenship "on less than a reasonable suspicion that they may be aliens," *United States v. Brignoni-Ponce*, 422 U.S. 873, 884, 95 S.Ct. 2574, 2582, 45 L.Ed.2d 607 (1975), petitioner here was not "stopped" or "detained." The immigration officers who came to her home were there for a valid reason—to find her husband, who was the subject of pending deportation proceedings. Once there for that legitimate purpose, the officers were not totally forbidden from questioning petitioner, who happened to answer their knock. Although petitioner need not have asked the officers into the house, answered their questions, or produced her passport there is sufficient evidence to support the Immigration Judge's finding that she did all of these things voluntarily. The government did not seek to use any of petitioner's statements against her, it simply sought to introduce the passport which petitioner's own testimony indicated was not "seized," but rather handed to the officers after they inquired about her country of origin. Moreover, nothing in the record supports petitioner's assertion that permission to enter was given and her passport produced only in "submission to authority." *Cf. Bumper v. North Carolina*, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968). Thus, we conclude that the INS officers obtained the passport lawfully, in compliance with Fourth Amendment standards.

■ Petitioner also argues that the passport's admissibility was barred by the officers' failure to give *Miranda* warnings before questioning her. This argument is now completely foreclosed by *Trias-Hernandez v. INS*, 528 F.2d 366 (9th Cir. 1975).

■ Petitioner next contends that the passport, assuming constitutional admissibility, lacked a proper foundation since it was not sufficiently shown to relate to her and therefore should have been excluded. This contention similarly is without merit.

The passport was issued in the same name as the Order to Show Cause, which petitioner stipulated related to her. The passport also bore a photograph which the Immigration Judge found to be "a good likeness" of petitioner. Additionally, petitioner admitted under questioning from her attorney that her passport had been given to two immigration officers who came to her home. Therefore, the Immigration Judge's implicit finding that the passport related to petitioner is supported by "reasonable, substantial, and probative evidence" even without drawing any adverse inference from her refusal to testify on this point, and we decline to disturb that finding. 8 U.S.C. § 1105a(a)(4).

■ In an argument again related to the passport's introduction into evidence, petitioner claims that the authentication requirements of 8 C.F.R. § 287.6 were disregarded. That regulation, however, relates only to attempts to prove the content of official records by introducing copies thereof. In this case, the INS introduced the actual passport itself, which bore several official seals of the Guatemalan Government. Thus, the verification requirements of the above regulation were inapplicable here.

With the passport in evidence, the government established that petitioner was an alien in the past and had been temporarily admitted as a nonimmigrant visitor in December, 1970. The Immigration Judge shifted the burden of going forward to petitioner at this point and found her deportable when she failed to produce evidence to rebut the passport's indication of alienage, and failed to produce evidence that extensions of stay had been granted beyond the period for which she could have been admitted as a nonimmigrant visitor. See 8 C.F.R. § 214.2(b) (1976). Petitioner, relying on *Sint v. INS*, 500 F.2d 120 (1st Cir. 1974), argues that the government's proof fell short of the "clear, unequivocal, and convincing evidence" of deportability required by *Woodby v. INS*, 385 U.S. 276, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966). We disagree.

The passport introduced by the government in this case established that petitioner was a native and citizen of Guatemala, and petitioner presented no evidence rebutting the inference that that status continued. Once alienage is established, it is presumed to continue until the contrary is shown. *Farrell v. United States*, 381 F.2d 368 (9th Cir. 1967); 1 Gordon & Rosenfield, *Immigration Law & Procedure* § 5.10c, at 5–124 (rev. 1976). In our view, the Guatemalan passport clearly provided the quantum of proof necessary to establish deportability, and the Immigration Judge's determination of continued alienage was supported by "reasonable, substantial, and probative evidence." 8 U.S.C. § 1105a (a)(4); *see Chacon-Campusano v. INS*, 549 F.2d 1329 (9th Cir. 1977).[1]

Petitioner finally argues that the BIA decided this case without notifying her counsel when briefs were due. The record indicates, however, that the INS sent petitioner's counsel a Form I–295 which indicated that a brief could be submitted until December 2, 1975. Additionally, even if counsel did not receive this form, the regulations clearly indicate that briefs are due within the time allowed for taking an appeal or within such additional period as may be designated by the Immigration Judge. 8 C.F.R. § 3.3(c). Therefore, counsel was on constructive notice that if briefs were not filed within the appeal period an extension was required from the Immigration Judge.

We have examined petitioner's other contentions of error. These contentions are either without merit or did not affect her substantial rights.

The decision of the Board of Immigration Appeals accordingly is affirmed.

---

1. In *Sint v. INS, supra*, the Court of Appeals for the First Circuit held that although proof of alienage 4 years before the deportation hearing may give rise to an inference that alienage continued up to the time of the hearing, such proof by itself did not provide the "clear, unequivocal, and convincing evidence" to sustain the government's burden of showing present deportability. Thus, the First Circuit essentially placed the burden on the government to negate the possibility of petitioner's being issued visas or even being naturalized during the 4-year "interim period." This view has been implicitly rejected by our court in *Chacon-Campusano v. INS, supra*. Although the "interim period" in Chacon-Campusano was only 1 month, the government's evidence that petitioner was a native and citizen of Argentina, evidence left unrebutted by the petitioner, was

sufficient to satisfy the government's burden of proving deportability under the applicable standards. Similarly, we believe the government's introduction of the Guatemalan passport here and its attendant inference of petitioner's continuing status thereunder satisfied the government's burden of proving petitioner's deportability.

It is also interesting to note in this case that had the government not successfully urged introduction of the Guatemalan passport over petitioner's objection, petitioner seemingly would have failed to meet her initial burden of showing the time, manner, and place of her entry into the United States under 8 U.S.C. § 1361. *See Chacon-Campusano v. INS, supra, Berahmand v. INS*, 549 F.2d 1343 (9th Cir. 1977), *quoting Trias-Hernandez v. INS, supra*.