ILLINOIS MIGRANT COUNCIL, et al., Plaintiffs,

v.

Alva L. PILLIOD, et al., Defendants.

ILLINOIS MIGRANT COUNCIL, et al., Plaintiffs,

v.

David VANDERSALL, et al., Defendants.

Nos. 74 C 3111, 75 C 3541.

United States District Court, N. D. Illinois, E. D.

Jan. 19, 1982.

F. Thomas Hecht, Bruce Goldsmith, Vincent H. Beckman, Illinois Migrant Legal Assistance Project, David Goldberger, Chicago, Ill., Robert Catz, Washington, D. C., Barbara P. O'Toole, Kenneth Montgomery, American Civil Liberties Union, Diane L. Redleaf, Jose Bracamonte, Legal Assistance Foundation of Chicago, Chicago, Ill., for plaintiffs.

Dan K. Webb, U. S. Atty., Chicago, Ill., for defendants.

## MEMORANDUM OPINION

MARSHALL, District Judge.

These consolidated cases present a challenge to the practices of the Immigration and Naturalization Service (INS). Plaintiffs allege that INS has a systematic practice and policy of harassing the plaintiff class of all persons of Mexican ancestry or Spanish surname lawfully in the Northern District of Illinois. This court entered a preliminary injunction against certain policies and practices of the defendants. *See*

*Illinois Migrant Council v. Pilliod*, 398 F.Supp. 882 (N.D.Ill.1975), *aff'd*, 540 F.2d 1062 (7th Cir. 1976), *modified*, 548 F.2d 715 (1977) (en banc). The parties currently have cross motions for summary judgment pending on the issue of the legality of INS's current policies. Also, defendants have pending a motion to modify the preliminary injunction.

The parties have stipulated to a number of facts. For purposes of the pending motions, the following facts are relevant. INS has statutory authority to interrogate aliens as to their right to remain in the United States, and to arrest aliens reasonably believed to be unlawfully present in the United States. 8 U.S.C. § 1357(a)(1) & (2) (1976). Pursuant to this power, INS conducts "area control operations," which are law enforcement operations designed to detect aliens unlawfully present in the United States. Appendix to Plaintiffs' Memorandum in Support of Summary Judgment at 5 [hereinafter cited as Plaintiffs' Appendix]. Area control operations are initiated on the basis of information such as anonymous tips, reports from informants, prior experience with employers, and review of employment records. *Id.* at 6. It is the policy of INS to focus these area control operations on businesses employing aliens, *id.* at 5–6, although they also are conducted at places such as landscaping sites, private homes, apartment buildings, O'Hare International Airport, and Union Station in Chicago, *id.* at 6.

In conducting area control operations, INS criminal investigators are routinely stationed at exits to the factories or residences to secure the premises and to prevent persons, for whom the agents believe there is probable cause or reasonable suspicion that such persons are aliens, from leaving the premises, while entry to the building is effected and the operation is conducted. *Id.* at 7.

In addition to area control operations, INS conducts operations in which individuals are stopped on the street and questioned

as to their immigration status.[1] In conducting these operations, officials of INS are guided by

> the policy of INS that officers may stop and question a person regarding his right to be or remain in the United States on probable cause or reasonable suspicion based on specific articulable facts and rational inferences drawn from those facts that the person is an alien. *Id.* at 5.

■ The motions for summary judgment currently before the court present the question of whether the policies of the INS outlined above are in conformity with the Constitution and the modified preliminary injunction currently in force. For purposes of these motions, defendants concede that the order states the constitutional limitations on the power of the INS to conduct searches, arrests, and investigatory stops. The only issue is whether INS policy complies with the injunction and the Constitution.[2]

The modified preliminary injunction enjoins defendants from

> (a) entering homes, dormitories, cottages or other dwellings in the Northern District of Illinois which are occupied by plaintiffs or any person of Mexican ancestry or of a Spanish surname who is, will be or has been lawfully present in the Northern District of Illinois, unless they possess a valid warrant to search or arrest, have probable cause to enter without such warrant, or have received permission voluntarily given by one lawfully entitled to give permission to enter;
>
> (b) arresting plaintiffs or any person of Mexican ancestry or of a Spanish surname who is, will be or has been lawfully present in the Northern District of Illinois unless they possess a valid warrant to search or arrest such person or have probable cause to search or arrest such person without a warrant;
>
> (c) stopping, detaining, and interrogating by force, threats of force or a command based upon official authority, plaintiffs or any person of Mexican ancestry or of a Spanish surname who is, will be or has been lawfully present in the Northern District of Illinois, unless they possess a valid warrant to search or arrest such person, have probable cause to search or arrest such person without a warrant, or have reasonable suspicion based on specific articulable facts that such person is an alien unlawfully in the United States; provided, however, that defendants and those acting pursuant to defendants' instructions or in concert with them are not enjoined or restrained from interrogating a person, without detention, concerning the person's right to be in the United States if they reasonably believe the person to be an alien.

■ Before evaluating the specific claims of the parties made in the motions for summary judgment,[3] it is essential that the

---

**1.** *See generally id.* at 79.

**2.** While 8 U.S.C. § 1357 (1976) purports to give INS the power to interrogate "any alien" regarding his immigration status, and to arrest "any alien" unlawfully present in the United States, this power is circumscribed by the dictates of the fourth amendment. 540 F.2d at 1070; 398 F.Supp. at 893–94.

**3.** The parties do not raise the issue of justiciability. However, since it goes to this court's jurisdiction, we mention it briefly. The parties seek to determine whether the policies of the INS comport with the judicially ascertainable standards of the fourth amendment. Defendants are alleged to have promulgated and implemented policies which systematically deny the plaintiffs their constitutional rights. Plaintiffs seek only to have this court apply the standards of the fourth amendment to INS poli-

cies. Thus, there clearly are judicially discoverable standards for decision. Since the motions address only the policies of the INS, this is not a case like *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1975), where there was no proof of any policy or practice attributable to the defendants, and therefore no case or controversy against them. Finally, plaintiffs do not seek to embroil the court in the day-to-day administration of INS and make judgments beyond its competence. Plaintiffs seek only to have this court enjoin defendants to refrain from policies and practices that violate the Constitution; the injunctive relief plaintiffs seek would not result in this court appropriating the actual administration and enforcement of our nation's immigration laws. That task remains with INS, subject only to the constitutional limitations on its power. For these reasons, this case remains justiciable. *See* 540 F.2d at 1067–69.

constitutional limitations on INS's power to interrogate and arrest persons be stated.

■ The fourth amendment applies to "seizures." The Supreme Court has stated that a seizure, for purposes of the fourth amendment, occurs "[o]nly when the [government] officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen...." *Terry v. Ohio*, 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968). *See also id.* at 16, 88 S.Ct. at 1877 ("[w]henever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person,"). The Court has consistently followed the *Terry* test, requiring some meaningful restraint on the freedom of movement of a person before it deems a "seizure" to have taken place. *See Michigan v. Summers*, 452 U.S. 692, 696, 101 S.Ct. 2587, 2590 n. 5, 69 L.Ed.2d 340 (1981); *Reid v. Georgia*, 448 U.S. 438, 440 n.*, 100 S.Ct. 2752, 2753 n.*, 65 L.Ed.2d 1890 (1980) (per curiam); *United States v. Mendenhall*, 446 U.S. 544, 552–54, 100 S.Ct. 1870, 1876–77, 64 L.Ed.2d 497 (1980) (opinion of Stewart, J.); *Brown v. Texas*, 443 U.S. 47, 50, 99 S.Ct. 2637, 2640, 61 L.Ed.2d 357 (1979); *Dunaway v. New York*, 442 U.S. 200, 207 n. 6, 99 S.Ct. 2248, 2253, 60 L.Ed.2d 824 (1979); *United States v. Brignoni-Ponce*, 422 U.S. 873, 878, 95 S.Ct. 2574, 2579, 45 L.Ed.2d 607 (1975); *Davis v. Mississippi*, 394 U.S. 721, 726–27, 89 S.Ct. 1394, 1397, 22 L.Ed.2d 676 (1969).[4] However, when a person is not deprived of liberty, but merely voluntarily cooperates with the authorities, then he has not been seized for purposes of the fourth amendment. *See Sibron v. New York*, 392 U.S. 40, 63, 88 S.Ct. 1889, 1903, 20 L.Ed.2d 917 (1968). Accordingly, when a person voluntarily cooperates with INS, is in no meaningful way detained, and retains his "freedom to walk away," *Terry v. Ohio*, 392 U.S. at 16, 88 S.Ct. at 1877, then no "seizure"

occurs, and the fourth amendment cannot be violated. *See Cuevas-Ortega v. INS*, 588 F.2d 1274, 1276–77 (9th Cir. 1979); *Shu Fuk Cheung v. INS*, 476 F.2d 1180, 1181–82 (8th Cir. 1973); *Cheung Tin Wong v. INS*, 468 F.2d 1123, 1126–27 (D.C.Cir.1972); *Au Yi Lau v. INS*, 445 F.2d 217, 222–23 (D.C.Cir.), *cert. denied*, 404 U.S. 864, 92 S.Ct. 64, 30 L.Ed.2d 108 (1971); *Yam Sang Kwai v. INS*, 411 F.2d 683, 688–89 (D.C.Cir.) (McGowan, J., concurring in the result), *cert. denied*, 396 U.S. 877, 90 S.Ct. 148, 24 L.Ed.2d 135 (1969).[5] This standard is embodied in the preliminary injunction, as modified.[6]

■ The fourth amendment prohibits unreasonable seizures. Therefore, once it is determined that a "seizure" has occurred, the question arises whether it is reasonable. This requires balancing the public interest in effective law enforcement against the individual's interest in remaining free of arbitrary or oppressive governmental intrusions. *See, e.g., United States v. Martinez-Fuerte*, 428 U.S. 543, 555, 96 S.Ct. 3074, 3081, 49 L.Ed.2d 1116 (1976); *United States v. Brignoni-Ponce*, 422 U.S. 873, 878, 95 S.Ct. 2574, 2579, 45 L.Ed.2d 607 (1975); *Terry v. Ohio*, 392 U.S. at 20–21, 88 S.Ct. at 1879. The general requirement for a reasonable seizure is probable cause. No one disputes the power of an INS agent to seize a person when the agent has probable cause to believe the individual in question is an alien unlawfully in the United States. Rather, this case involves the scope of INS's power to operate when it does not have probable cause. In *Brignoni-Ponce*, the Supreme Court held that INS may stop and briefly detain a vehicle and interrogate persons therein if INS agents "are aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion that [the persons in question are] aliens who may be illegally

---

4. Of course, the person seized must be aware that his freedom of movement has been constrained, or else his interest in freedom has not been denied. *See Yam Sang Kwai v. INS*, 411 F.2d 683, 686 (D.C.Cir.), *cert. denied*, 396 U.S. 877, 90 S.Ct. 148, 24 L.Ed.2d 135 (1969).

5. *See also Lee v. INS*, 580 F.2d 497 (3d Cir. 1979); *United States v. Rodreguez*, 532 F.2d 834, 838–39 (2d Cir. 1976).

6. *See* 548 F.2d at 715. *See also* 540 F.2d at 1076–77 (Tone, J., dissenting).

in the country." 422 U.S. at 884, 95 S.Ct. at 2582 (footnote omitted).[7] Plaintiffs concede that, under *Brignoni-Ponce*, INS may stop and briefly detain and interrogate persons when there is reasonable suspicion that they may be aliens unlawfully in the country.[8] However, there remains the question, reserved by the Court in *Brignoni-Ponce*, whether INS may stop and detain individuals based solely on a reasonable suspicion that they are aliens, without any reason to believe they are unlawfully in the country. *See id.* at 884 n. 9, 95 S.Ct. at 282. The law of the case on this point is that INS may not so act. *See* 540 F.2d at 1070; 398 F.Supp. at 898–99. We are not inclined to alter this holding, for we are convinced that it is mandated by the fourth amendment.

■ The Court has consistently held that an investigatory stop based on less than probable cause may only be performed if there is a reasonable suspicion, based on specific articulable facts concerning the individual in question, that the individual stopped is engaged in *criminal* activity. The Court's most recent statement of this principle is found in *United States v. Cortez*, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981), where it stated, "An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal behavior." *Id.* at 417, 101 S.Ct. at 695 (footnote omitted). The Court then went on to note that investigatory stops may only be performed when the totality of circumstances raise[s] a suspicion that the particular individual being stopped is engaged in wrongdoing. Chief Justice Warren, speaking for the Court in *Terry v. Ohio, supra*, said that "[t]his demand for specificity in the information upon which police action is predicated is the central teaching of this Court's Fourth Amend-

ment jurisprudence. *Id.* at 418, 101 S.Ct. at 695 (emphasis deleted) (quoting *Terry v. Ohio*, 392 U.S. at 21 n. 18, 88 S.Ct. at 1880).

The principle that investigatory stops are only justified when there is reasonable suspicion of criminal activity was first enunciated in *Terry*, where the Court wrote, "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating *possibly criminal behavior* even though there is no probable cause to make an arrest." 392 U.S. at 22, 188 S.Ct. at 1880 (emphasis supplied). In its fourth amendment jurisprudence between *Terry* and *Cortez*, the Court has consistently adhered to the principle that suspicion of criminal activity is required before an investigatory stop can be made. *See Reid v. Georgia*, 448 U.S. 438, 440, 100 S.Ct. 2752, 2753, 65 L.Ed.2d 890 (1980) (per curiam); *Adams v. Williams*, 407 U.S. 143, 145, 92 S.Ct. 1921, 1922, 32 L.Ed.2d 612 (1972); *Sibron v. New York*, 392 U.S. 40, 64, 88 S.Ct. 1889, 1903, 20 L.Ed.2d 917 (1968).[9] *See also Dunaway v. New York*, 442 U.S. 200, 209–16, 99 S.Ct. 2248, 2254–58, 60 L.Ed.2d 824 (1979). To allow INS to conduct investigatory stops when it suspects only that the person stopped is an alien is to subvert this fundamental principle of fourth amendment jurisprudence. In such cases, there is no suspicion that the individual stopped is engaged in criminal activity. If the INS had this power, it would be able to arbitrarily "seize" a large category of persons, many if not most of whom are presumably engaged in no wrongdoing. That is the sort of general seizure, not linked to specific facts which give rise to an inference that the specific individual seized is engaged in criminal activity, which the fourth amendment prohibits. *See Reid v. Georgia*, 448 U.S. at 440–41, 100 S.Ct. at 2753–54; *Brignoni-*

---

7. Neither this case nor *Brignoni-Ponce* involves the scope of INS's power to conduct searches and seizures at fixed checkpoints. *See generally United States v. Martinez-Fuerte*, 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976); 540 F.2d at 1070.

8. While *Brignoni-Ponce* dealt with the stop of an automobile, plaintiffs concede its applicability to the instant case. *See generally* 398 F.Supp. at 896–99.

9. This principle was recently restated in *Michigan v. Summers*, 452 U.S. 692, 699, 101 S.Ct. 2587, 2592, 69 L.Ed.2d 340 (1981).

*Ponce,* 422 U.S. at 882–83, 95 S.Ct. at 2581. Therefore, we adhere to our earlier holding that INS may not conduct investigatory stops based solely on suspicion that the person stopped is an alien.[10] *Accord, Cordon de Ruano v. INS,* 554 F.2d 944, 946 (9th Cir. 1977); *Marquez v. Kiley,* 436 F.Supp. 110, 114 (E.D.N.Y.1977).[11]

We now turn to the specific issues raised by the motions for summary judgment.

Defendants contend that their policy of stopping and questioning individuals when agents reasonably suspect the person stopped is an alien is constitutional. Defendants argue that this policy does not involve "seizures," since individuals are never detained and remain free to walk away during these encounters. To support their position, defendants rely on United States Department of Justice, The Law of Search and Seizure for Immigration Officers 4 (M–69, rev. 1979), *reprinted in* Plaintiffs' Appendix at 30, which states that a "stop and question" of a pedestrian requires the voluntary cooperation of the person stopped. Plaintiffs argue that this policy does result in "seizures." They rely on the language in the Stipulated Facts stating that INS "stops" individuals. The notion of a "stop," plaintiffs argue, connotes a limitation on freedom of movement. Plaintiffs also rely on a set of guidelines issued by INS which state that agents should "insist" on answers to their questions during these "stops." *See* Plaintiffs' Appendix at 25.

On this issue, there is a genuine issue of material fact. Each side has submitted evidence which supports its view of what the INS policy and practice actually are; neither side's evidence is conclusive. Since the evidence is in conflict, this question must be resolved at trial. Summary judgment will not be granted on this issue. *See* Fed.R.Civ.P. 56(c).

Next, we turn to INS's policy of stationing agents at all exits during area control operations, in order to secure the premises and prevent persons whom the agents have probable cause or reasonable suspicion to believe are aliens from leaving the premises during the operation.

It is clear that this policy results in "seizures" for purposes of the fourth amendment.[12] The entire purpose of the policy of "securing the premises" is to ensure that the agents "control" the aliens during the course of the "control operation." The agents stationed at the exits are specifically instructed to prevent from leaving those individuals they suspect are aliens. The record reveals that the agents do in fact surround and detain all persons on the premises during control operations. *See* Plaintiffs' Appendix at 88–93, 97–102, 104–09, 145–46.

Defendants advance the novel theory that area control operations are conducted only with the voluntary cooperation of

**10.** The court of appeals continues to treat the earlier holding of this case as good law. *See United States v. Sanchez-Jaramillo,* 637 F.2d 1094, 1099 (7th Cir.), *cert. denied,* 449 U.S. 862, 101 S.Ct. 166, 66 L.Ed.2d 279 (1980).

**11.** Other courts, while not explicitly deciding the question, state the applicable rule as requiring reasonable suspicion that the alien is unlawfully in the country. *See, e.g., Au Yi Lau v. INS,* 445 F.2d 217, 223 (D.C.Cir.), *cert. denied,* 404 U.S. 864, 92 S.Ct. 64, 30 L.Ed.2d 108 (1971); *United States v. Hernandez,* 470 F.Supp. 1212, 1217–20 (E.D.N.Y.), *aff'd,* 615 F.2d 1351 (2d Cir. 1979). While there is dicta in *Ojeda-Vinales v. INS,* 523 F.2d 286, 288 (2d Cir. 1975), which seems to support stops based on suspicion of alienage alone, that case does not appear to stand for that proposition. *See id.* at 287; 436 F.Supp. at 112 n. 16.

**12.** Defendants rely on Justice Stewart's opinion in *United States v. Mendenhall,* 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980), to support their conclusion that no seizure occurs during area control operations. However, Justice Stewart's views on the issue of whether a seizure occurred in *Mendenhall* were not accepted by a majority of the Court. *See id.* at 560 n. 1, 100 S.Ct. at 1873 (Powell, J., concurring in part and concurring in the judgment); *id.* at 569–71 & n. 5, 100 S.Ct. at 1873–74 (White, J., dissenting). *See also United States v. Pope,* 561 F.2d 663, 668 (6th Cir. 1977). In any event, deposition testimony submitted by defendants indicates that the freedom of movement of persons suspected merely of alienage is interfered with during the course of area control operations. *See* Defendants' Exs. 2 at 4–5, 4 at 1, as does the stipulation.

those on the premises, and that the agents stationed at the exits do not force anyone to remain on the premises. In fact, defendants argue, the persons on the premises are entirely unaware of the presence of agents at the exits. Defendants have produced no affidavits or other material in support of these assertions. Indeed, the assertions are inherently incredible, and find no support in the stipulated facts. The stipulation states that agents are instructed to "prevent" persons from leaving. Nowhere does the stipulation, or any other material in the record, indicate that this is only done by consent. Indeed, the entire notion of preventing people from leaving a given area, and "securing" that area, requires that the agents rely on their authority, if not actual threats of force, to restrict freedom of movement and the "freedom to walk away." In fact all the relevant evidence in the record on this point indicates that individuals are detained by the agents, and not allowed to walk away. In short, the stipulation means what it says, "prevent" means "prevent," it does not involve the consent of the person who is "prevented" from doing something.

Similarly, the record contains no indication that persons are never made aware of the limitation of their movement during area control operations. If this were the case, there would be no purpose in stationing agents at the exits, since persons on the premises would presumably never have occasion to confront these agents. Again, the entire notion of "securing the premises" necessarily implies that those on the premises are made aware of the presence of INS agents. Defendants' assertions are at odds with the stipulation and unsupported by the record.

Defendants have not produced a single affidavit or other item which indicates that all that goes on during area control operations is voluntary questioning of persons who remain at all times free to walk away.

Indeed, when agents are stationed at points of egress, it is only reasonable to infer that they are there in order to restrict egress. *See United States v. Nicholas*, 448 F.2d 622, 624 (8th Cir. 1971); *United States v. Hostetter*, 295 F.Supp. 1312, 1315 (D.Del.1969). This limitation on the freedom to walk away means that a seizure has occurred for purposes of the fourth amendment.

 The stipulation states that INS agents prevent all persons whom they suspect are aliens from leaving the premises during area control operations. We have earlier held that the fourth amendment prohibits INS from conducting investigatory "seizures" based on a reasonable suspicion that the person seized is an alien. Only reasonable suspicion that the person seized is an alien unlawfully in the United States will suffice. The INS policy of detaining persons its agents suspect are aliens during area control operations violates the fourth amendment. Plaintiffs are entitled to summary judgment on this issue.[13]

 The final issue raised by the parties in their motions for summary judgment concerns INS's policy regarding search warrants. Plaintiffs argue that INS has adopted a policy of obtaining "dragnet" warrants which authorize seizure of all persons found on the premises during area control operations. This policy, it is argued, violates the constitutional requirements that warrants specifically name those persons to be seized, and may not authorize dragnet detention of all persons found on the premises. *See generally Ybarra v. Illinois*, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979); *Stanford v. Texas*, 379 U.S. 477, 85 S.Ct. 506, 13 L.Ed.2d 431 (1965). However, we hold that this claim is moot. Since May of 1980, defendants have stopped their practice of obtaining such dragnet warrants. *See* Defendants' Ex. 6. Accordingly, defendants are entitled to summary judgment on this issue.[14]

---

**13.** Even when defendants conduct area control operations pursuant to a warrant, they may not constitutionally detain persons whom they suspect of being aliens unless the warrant explicitly authorizes the detention of the particular individual detained. *See Ybarra v. Illinois*, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979).

**14.** Plaintiffs do not argue that this case falls into the category of cases which are not rendered moot depite the defendant's voluntary

■ Defendants have moved to modify the preliminary injunction. Defendants state that, subsequent to the decision in *Blackie's House of Beef, Inc. v. Castillo*, 659 F.2d 1211 (D.C.Cir.1981), INS instructed its field offices that they should no longer obtain warrants based on probable cause to seize specified aliens pursuant to Fed.R. Crim.P. 41(b)(4), but instead should obtain civil administrative warrants under the probable cause standard of *Marshall v. Barlow's Inc.*, 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978), and *Camara v. Municipal Court*, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967).[15] Defendants state that they wish to implement this policy, and request that the preliminary injunction be modified to permit the use of administrative warrants issued under a relaxed probable cause standard which requires only specific evidence of a violation of the immigration laws occurring on the premises to be searched. This is the probable cause standard imposed by the court in *Blackie's*, at 1224–1226.[16]

■ The modified preliminary injunction is limited to "homes, dormitories, cottages or dwellings occupied by [class members]" insofar as it relates to INS's search activities.[17] Accordingly, it need not be further modified in order to permit the use of administrative search warrants with respect to commercially owned premises which are owned, occupied, or maintained by non-class persons or entities.[18]

■ However, administrative warrants may not be used by INS to justify the seizure of persons. Assuming *arguendo* that *Blackie's* was correctly decided and that INS may utilize an administrative warrant to enter and search a given commercial location, such a warrant does not authorize the search or seizure of persons found on the premises. Warrants to search premises simply do not authorize the seizure of persons found on the premises. *See Steagald v. United States*, 451 U.S. 204, 101 S.Ct. 1642, 1658, 68 L.Ed.2d 38 (1981) (Warrants to search are issued for different reasons and to serve different interests than warrants to arrest persons.).[19] The Court has

cessation of the challenged activity. *See generally County of Los Angeles v. Davis*, 440 U.S. 625, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979). Therefore, we do not reach this question.

**15.** INS proposes the use of administrative warrants when the "primary purpose" of the search is not to develop a criminal prosecution. INS apparently considers area control operations as primarily intended to generate civil deportation cases, for it recommends the use of administrative warrants for conducting these operations.

**16.** Since it goes to the question of justiciability of the motion, and hence to our jurisdiction to consider it, we briefly consider the question of ripeness. Defendants have not indicated that they have implemented the new policy regarding administrative warrants in the Northern District of Illinois. However, they have stated that they intend to do so as soon as this court rules on their motion. Defendants have a crystallized present intention to implement this policy in the immediate future. If defendants were required to act prior to our decision, they would risk being found in contempt of this court. Accordingly, this issue is ripe for judicial decision. *See generally Steffel v. Thompson*, 415 U.S. 452, 459, 94 S.Ct. 1209, 1215, 39 L.Ed.2d 505 (1973); *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148–53, 87 S.Ct. 1507, 1515–17, 18 L.Ed.2d 681 (1967).

**17.** The word "warrants" in the preliminary injunction should be construed to refer to traditional warrants supported by probable cause.

**18.** Plaintiffs lack standing to contest searches of such commercial premises. *See* 398 F.Supp. at 900.

**19.** *Michigan v. Summers*, 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981), allows the police to require the resident of a dwelling to remain on the premises during a search of the dwelling pursuant to a warrant based on probable cause to believe there was contraband on the premises. This result was based on the principle that

some seizures admittedly covered by the Fourth Amendment constitute such limited intrusions on the personal security of those detained and are justified by such substantial law enforcement interests that they may be made on less than probable cause, *so long as the police have an articulable basis for suspecting criminal activity.* Id. at 2592 (emphasis supplied).

However, when there is only a civil administrative warrant, and no reasonable suspicion to believe the persons detained are aliens unlawfully in the country, the principle enunciated above indicates that the warrant does not authorize detention, since there is no basis for

stated that administrative warrants authorize the search only of "commercial property," *see Donovan v. Dewey*, 452 U.S. 594, 599, 101 S.Ct. 2534, 2538, 69 L.Ed.2d 263 (1981), or for inspection of property, *see Camara v. Municipal Court*, 387 U.S. at 534–39, 87 S.Ct. at 1733–36. The Court has never held that an individual may be searched or seized on anything less than reasonable suspicion that he is engaged in criminal activity. *See Michigan v. Summers*, 452 U.S. 692, 699, 101 S.Ct. 2587, 2592, 69 L.Ed.2d 340 (1981); *United States v. Cortez*, 449 U.S. 411, 417–18, 101 S.Ct. 690, 693–94, 66 L.Ed.2d 621 (1981); *Reid v. Georgia*, 448 U.S. 438, 100 S.Ct. 2752, 65 L.Ed.2d 1890 (1980) (per curiam). Thus, assuming without deciding that INS may utilize administrative warrants to search commercial premises, it may not use such warrants to search or seize individuals found on the premises.

The modified preliminary injunction does apply to "homes, dormitories, cottages or other dwellings." Therefore, we have occasion to consider whether the preliminary injunction should be modified to permit the entry and search of these structures under a relaxed probable cause standard.[20]

■ *Blackie's* dealt with the search of commercial premises, as did the Seventh Circuit decision it relied on, *Burkart Randall Division of Textron, Inc. v. Marshall*, 625 F.2d 1313 (7th Cir. 1980) (holding that an OSHA inspection may be made pursuant to an administrative warrant based on employee complaints of OSHA violations at the premises searched). However, the government now seeks authorization to enter and search homes. This poses a very different question, for the privacy interests

protected by the fourth amendment are never stronger than when the search of a home is at issue. "[P]hysical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed," *Payton v. New York*, 445 U.S. 573, 585, 100 S.Ct. 1371, 1379, 63 L.Ed.2d 639 (1980) (quoting *United States v. United States District Court*, 407 U.S. 297, 313, 92 S.Ct. 2125, 2135, 32 L.Ed.2d 752 (1972)). Because of this constitutional protection for the home, the warrant requirement has always been strictly applied to searches of the home. The Court has written, "we have consistently held that the entry into a home to conduct a search or make an arrest is unreasonable under the Fourth Amendment unless done pursuant to a warrant." *Steagald v. United States*, 451 U.S. 204, 101 S.Ct. 1642, 1647, 68 L.Ed.2d 38 (1981). The Court amplified this point in *Payton v. New York*:

> In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not be crossed without a warrant.
> 445 U.S. at 590, 100 S.Ct. at 1382.

These statements are amply supported by precedent. In a long line of cases, the Court has insisted on strict adherence to the warrant requirement when it comes to the searches of dwellings. *See Vale v. Louisiana*, 399 U.S. 30, 33–34, 90 S.Ct. 1969, 1971, 26 L.Ed.2d 409 (1970); *Stoner v. California*, 376 U.S. 483, 487 n. 4, 84 S.Ct. 889, 891, 11 L.Ed.2d 856 (1964); *Johnson v. United States*, 333 U.S. 10, 13–14, 68 S.Ct. 367, 368–369, 92 L.Ed. 436 (1948); *Agnello v. United States*, 269 U.S. 20, 33, 46 S.Ct. 4, 6,

suspecting criminal activity on the part of the persons detained. *Summers* indicates that INS may not detain persons on the basis of administrative warrants when they merely suspect the persons detained are aliens.

**20.** The question whether INS may procure administrative warrants authorizing area searches has been reserved by the Supreme Court on one occasion, *see United States v. Ortiz*, 422 U.S. 891, 897 n. 3, 95 S.Ct. 2585, 2589, 45 L.Ed.2d 623 (1975). On another, the Court announced that it was "split." *See United States v. Almeida-Sanchez*, 413 U.S. 266, 270 n. 3, 93 S.Ct. 2535, 2538, 37 L.Ed.2d 596 (1973). In *Almeida-Sanchez*, Justice Powell stated his view that the fourth amendment permitted such warrants. *See id.* at 277–85, 93 S.Ct. at 2541–45 (Powell, J., concurring). In *Blackie's*, the court did not reach this question, *see* p. 1222 n. 13, limiting its discussion to searches of specific premises where there is specific evidence of an existing violation of the immigration laws.

70 L.Ed. 145 (1925); *Weeks v. United States*, 232 U.S. 383, 393, 34 S.Ct. 341, 344, 58 L.Ed. 652 (1914); *Boyd v. United States*, 116 U.S. 616, 624, 6 S.Ct. 524, 529, 29 L.Ed. 746 (1886).

When the Court refers to the need for a warrant in these cases, it is clear what kind of warrant it is referring to.

An arrest warrant is issued by a magistrate upon a showing that probable cause exists to believe that the subject of the warrant has committed an offense and thus the warrant primarily serves to protect an individual from an unreasonable seizure. A search warrant, in contrast is issued upon a showing of probable cause to believe that the legitimate object of a search is located in a particular place, and therefore safeguards an individual's interest in the privacy of his home and possessions against the unjustified intrusion of the police. *Steagald v. United States*, 101 S.Ct. at 1648.

Thus, the sort of warrant the Court has always required for the search of a dwelling is a warrant based upon judicial determination of probable cause. *See Michigan v. Summers*, 101 S.Ct. at 2593; *Payton v. New York*, 445 U.S. at 603, 100 S.Ct. at 1388. Therefore, we hold that the fourth amendment prohibits the issuance of a warrant to enter and search a dwelling based not on probable cause, but merely on *Blackie's* "specific evidence" standard. There is simply no authority for the proposition that governmental authorities may enter and search a dwelling on the basis of something less than probable cause, absent exigent circumstances. In *Dewey v. Donovan*, the Court's dicta allowing use of administrative warrants was limited to the entry and search of "commercial property." In *Marshall v. Barlow's Inc.*, similar dicta was limited to "an administrative search such as this," 436 U.S. at 320, 98 S.Ct. at 1824, referring to a search of commercial premises. The only time the Court has approved the issuance of administrative warrants authorizing the search of dwellings was when it stated in *Camara* that administrative warrants could be issued authorizing searches of dwellings for building code vio-

lations pursuant to a neutral area-wide inspection plan. 387 U.S. at 537–40, 87 S.Ct. at 1735–36. *But cf. Michigan v. Tyler*, 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978) (fire inspectors may enter a store to investigate causes of fire pursuant to an administrative warrant). The *Camara* dictum explained why searches pursuant to administrative warrants not based on probable cause were reasonable under the fourth amendment:

[T]here can be no ready test for determining reasonableness other than by balancing the need to search against the invasion which the search entails. But we think that a number of persuasive factors combine to support the reasonableness of area code-enforcement inspections. First, such programs have a long history of judicial and public acceptance. Second, the public interest demands that all dangerous conditions be prevented or abated, yet it is doubtful that any other canvassing technique would achieve the acceptable results. Many such conditions—faulty wiring is an obvious example—are not observable from outside the building and indeed may not be apparent to the inexpert occupant himself. Finally, because the inspections are neither personal in nature nor aimed at the discovery of evidence of crime, they involve a relatively limited invasion of the urban citizen's privacy. 387 U.S. at 536–37, 87 S.Ct. at 1735 (citation omitted).

As to the first factor, defendants have cited us to no case approving administrative warrants authorizing INS searches of dwellings, and we have found no evidence of a long history of judicial or public acceptance. In fact, the administrative warrant procedure INS urges on this court appears to have had its birth in *Blackie's*, and even that case did not apply the procedure to the search of dwellings. As to the second factor, this case does not involve a threat to public health and safety such as is the case with building codes. Moreover, there are techniques beside that suggested by defendants to enforce the immigration laws. In particular, the preliminary injunction al-

lows INS to obtain warrants supported by probable cause. To obtain such a warrant, INS need obtain only that quantum of evidence which would warrant a man of reasonable prudence to conclude that evidence of a crime will be found on the premises to be searched. We hardly think INS will be crippled if it is not permitted to conduct those searches which a magistrate believes are not warranted under this "reasonable prudence" standard. In fact, the court of appeals stated that the standard contained in the preliminary injunction serves the public interest. See 540 F.2d at 1071. As to the third factor, the searches INS seeks to conduct are "personal in nature." These searches are designed to result in the interrogation and detention of those found on the premises who INS suspects are illegal aliens. These searches are far more intrusive than the simple building code inspections at issue in *Camara.* Therefore, the balancing process mandated by *Camara* indicates that INS is not justified in obtaining warrants to search homes, those areas most highly protected by the fourth amendment, on the basis of anything less than probable cause to believe that evidence of violations of the immigration laws will be found on the premises. The preliminary injunction will not be modified to allow INS to obtain warrants to search dwellings under the relaxed probable cause standard of *Blackie's House of Beef.*

■ Finally, we turn to the question of the appropriate relief in this case. Under the law of the case, injunctive relief is appropriate, since plaintiffs have demonstrated irreparable injury by showing that INS has adopted an unconstitutional policy and practice with respect to detention of persons believed to be aliens during area control operation. See 548 F.2d at 1067 ("Because plaintiffs have shown a specific pattern of conduct, akin to an explicit policy, they have demonstrated a reasonable likelihood of future harm, justifying their request for injunctive relief.") The other requirements for injunctive relief, lack of serious adverse effects on others and sufficient public interest, are met.

Compelling the INS agents to comply with the dictates of the Fourth Amendment does not impose an improper burden upon them. We also do not believe that enforcement of the injunction will unduly burden the defendants. The degree of court supervision of defendants' activity is that upheld in *Allee v. Mendrano,* [416 U.S. 802, 94 S.Ct. 2191, 40 L.Ed.2d 566 (1974)] and *Hague v. CIO,* [307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939)]. As in those cases, the defendants will still be able to exercise the full breadth of their lawful authority. Further, the injunction requires the court to review only those actions in which defendants allegedly violate plaintiffs' rights. It thereby avoids the problem ... of attempting to regulate the internal affairs of the agency. Finally, the public interest is served ... for otherwise the dragnet practices violating the Fourth Amendment rights of plaintiffs could continue unabated. 540 F.2d at 1071 (footnote omitted) (some citations omitted).

Accordingly, the judgment of this court is as follows. On the issue of INS detention of persons believed to be aliens during area control operations, plaintiffs' motion for summary judgment is granted and defendants' motion for summary judgment is denied. On the issue of INS policy regarding the procurement of so-called dragnet search warrants, defendants' motion for summary judgment is granted and plaintiffs' motion for summary judgment is denied. On the issue of INS "stop and question" policy, plaintiffs' and defendants' motions for summary judgment are denied, and the issue of INS's policy and practice with respect thereto is held for trial. Defendants' motion for further modification of the preliminary injunction is denied.

■ Defendants will be permanently enjoined from detaining or limiting, through force, threats of force, or a command based on official authority, the freedom of movement of plaintiffs or any person of Mexican ancestry or of a Spanish surname who is, will be or has been lawfully present in the Northern District of Illi-

nois, unless defendants have a valid warrant to arrest or search such person, have probable cause to search or arrest such person without a warrant, or have reasonable suspicion based on specific articulable facts that such person is an alien unlawfully in the United States, during the course of area control operations or any other law enforcement operation; provided, however, that defendants and those acting pursuant to defendants' instructions or in concert with them will not be enjoined or restrained from interrogating a person, without detention, concerning the person's right to be in the United States if they reasonably believe the person to be an alien.

The cause is set for report on status and to set for trial on the above identified issue on January 27, 1982 at 10:00 a. m.[21]

21. The parties are also invited to address the following questions: 1) Should the preliminary and final injunctions be modified with respect to the entry of dwellings without a search warrant in light of *Steagald v. United States*, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38.(1981), and *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980)? 2) Can ¶¶ (a) and (b) of the preliminary injunction be made final?