Miguel **TEJEDA–MATA,** Petitioner,

v.

**IMMIGRATION AND NATURALIZATION SERVICE,** Respondent.

No. 78–3651.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 19, 1980.

Decided Aug. 29, 1980.

---

Charles H. Barr, Tri-Cities, Wash., for petitioner.

Eric A. Fisher, Washington, D.C., for respondent.

Before CHOY and FERGUSON, Circuit Judges, and BARTELS,* District Judge.

BARTELS, District Judge:

Petitioner Miguel Tejeda-Mata appeals an order of the Board of Immigration Appeals dated November 16, 1978 dismissing his appeal from an Immigration Judge's finding of deportability under section 241(a)(2) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(2), and granting him voluntary departure.[1] The principal

---

* The Honorable John R. Bartels, United States District Judge for the Eastern District of New York, sitting by designation.

1. Section 1251(a)(2) of Title 8 of the United States Code provides:

(a) Any alien in the United States . . . shall, upon the order of the Attorney General, be deported who—

\* \* \* \* \* \*

(2) entered the United States without inspection or at any time or place other than as designated by the Attorney General or is in

issues presented are whether (1) the Immigration Judge's finding as to the sufficiency of the evidence was supported by reasonable, substantial, and probative evidence, and (2) the administrative authorities denied petitioner due process of law in reaching the ultimate conclusion of deportability. We affirm.

## I. *Background*

Petitioner is a native of Mexico and is charged with having entered the United States near San Ysidro, California without inspection in November 1974. While driving through a store parking lot in Connell, Washington on February 19, 1977, Immigration Officer Jimmy Spence recognized an alien whom he had previously arrested and who had been granted voluntary departure from the United States approximately three weeks earlier. After parking his vehicle so that it blocked the exit of the alien's vehicle, Spence approached and began to open the door on the driver's side of the alien's car. Suddenly, petitioner ran toward the car, asked in Spanish what was happening, and said in English with a heavy Spanish accent, "It's my car." Spence informed him that he was an immigration officer and asked petitioner who he was. When petitioner appeared not to understand, Spence asked in Spanish where he was from, and petitioner responded that he came from Mexico.

After placing both persons in his vehicle, Officer Spence asked whether either had family or possessions in the United States. Both answered "no," but petitioner changed his mind to the affirmative fifteen minutes en route to the jail in Othello, Washington. When petitioner subsequently refused to sign a request for voluntary departure form, Spence obtained an order to show cause and an arrest warrant and prepared a Record of Deportable Alien, INS Form I–213.[2]

At his deportation hearing held on February 7, 1978, petitioner, through his counsel, denied each of the allegations contained in the order to show cause, and he refused to admit deportability. Through a Spanish language interpreter, petitioner testified regarding the events surrounding his arrest on February 19, 1977, but he refused to answer any questions concerning his citizenship or entry into the United States on the ground that the answers might tend to incriminate him. Upon questioning by the INS trial attorney, however, petitioner admitted telling Officer Spence prior to his arrest that he came from Mexico. Petitioner's counsel requested that the testimony of Officer Spence, the only witness offered by the government, be translated for his client into Spanish by the official interpreter. When this request was denied by the Immigration Judge, petitioner's counsel offered to translate the testimony himself so that petitioner would have the benefit of simultaneous translation of the testimony against him. This request was also denied. During the course of Spence's testimony, the INS Form I–213 was admitted into evidence over petitioner's objection.

At the conclusion of the hearing, the Immigration Judge found that (1) petitioner had voluntarily told Officer Spence before arrest that he was from Mexico; (2) because of this admission, petitioner had the burden of proving time, place, and manner of entry into the United States, which burden he failed to carry; and (3) petitioner's deportability had been established by clear, convincing, and unequivocal evidence. He granted petitioner the privilege of voluntary departure.

The Board of Immigration Appeals dismissed petitioner's appeal in a four-page decision, concluding that the Immigration Judge's admission into evidence of Form I–213 was proper because the document

---

the United States in violation of this chapter or in violation of any other law of the United States . . .

     \*    \*    \*    \*    \*    \*

2. Information contained on the INS Form I–213 included petitioner's name, local address, per-

manent address ("Caguallana, Mich., Mexico"), country of citizenship ("Mexico"); the names and addresses of his wife, child, and parents; and the circumstances of his arrest and statements made thereafter. The form was signed by INS Officer Spence.

was trustworthy and prepared in the regular course of business; petitioner had failed to meet his burden of proving time, place, and manner of entry into the United States; Officer Spence was authorized to question petitioner without a warrant for his arrest because petitioner failed to produce any evidence that Spence did not have a reasonable suspicion that petitioner was an illegal alien; and since the regulations contained no requirement that the deportation proceedings be recorded in Spanish, petitioner was not denied due process by the Immigration Judge's failure to require such transcription.

This appeal followed.

## II. *Sufficiency of the Evidence*

■ Petitioner challenges the sufficiency of the evidence on several grounds. First, he asserts that Form I–213 was inadmissible because of its hearsay character and because it was not properly authenticated. Similar contentions were considered and rejected by this court in *Trias-Hernandez v. Immigration and Naturalization Service*, 528 F.2d 366, 369 (9th Cir. 1975), where we upheld the admissibility of Form I–213 upon our finding that it was (1) probative on the issue of petitioner's entry into the United States, and (2) fundamentally fair. In this case, the information contained on the form—*e. g.*, name, address, country of citizenship, circumstances of arrest, etc.— was undoubtedly probative, and there is no basis in the record to conclude that the information was obtained from anyone other than petitioner or that it was in any way the product of coercion or duress. Moreover, the authenticity of the document was sufficiently established by the testimony of Officer Spence, who identified it as the I–213 form prepared by him shortly after arriving at the jail in Othello, Washington on February 19, 1977.

■ Second, petitioner contends that his admission to Officer Spence that he came from Mexico should have been suppressed because it was coerced. On the contrary, at the time petitioner made the statement no arrest had been made, no curtailment of petitioner's liberty had been imposed, and no threat to do so had been made by Officer Spence. Because petitioner willingly admitted his alienage under such circumstances, he cannot now claim that his statement was the product of an illegal search or seizure. *Cordon de Ruano v. Immigration and Naturalization Service*, 554 F.2d 944, 946 (9th Cir. 1977); *Illinois Migrant Council v. Pilliod*, 540 F.2d 1062, 1071 (7th Cir. 1976), *modified in part on rehearing en banc*, 548 F.2d 715 (7th Cir. 1977). Moreover, section 287(a)(1) of the Immigration and Naturalization Act, 8 U.S.C. § 1357(a)(1), authorizes any INS officer to interrogate without a warrant any person believed to be an alien as to his right to be or remain in the United States. *Id.* at 1070; *Ojeda-Vinales v. Immigration and Naturalization Service*, 523 F.2d 286, 287 (2d Cir. 1975); *Cheung Tin Wong v. Immigration and Naturalization Service*, 468 F.2d 1123, 1128 (D.C.Cir.1972); *Au Yi Lau v. Immigration and Naturalization Service*, 445 F.2d 217, 223 (D.C.Cir.), *cert. denied*, 404 U.S. 864, 92 S.Ct. 64, 30 L.Ed.2d 108 (1971). In this case, the reasonableness of Officer Spence's belief is supported by a number of circumstances. For example, petitioner was with a known illegal alien, spoke with a distinct Spanish accent, and had trouble understanding English. In addition, he approached and sought to interrupt Spence as he was trying to open the car door to speak with the known illegal alien, and he appeared shocked when he heard Spence was an INS officer. On the basis of these circumstances, we believe Officer Spence's brief questioning of petitioner concerning his name and country of origin was clearly justified, and we conclude, therefore, that petitioner's statement of alienage was properly admitted by the Immigration Judge.[3]

■ Finally, petitioner seeks to overturn the finding of deportability on the basis of an allegedly illegal arrest. Section

---

**3.** Petitioner's contention that *Miranda* warnings were required at the time of his arrest has previously been rejected by this court in *Trias-* *Hernandez v. Immigration and Naturalization Service*, 528 F.2d 366, 368–69 (9th Cir. 1975).

287(a)(2) of Title 8 U.S.C. authorizes an INS officer to arrest without a warrant "any alien in the United States, if he has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest . . . ." The phrase "has reason to believe" has been equated with the constitutional requirement of probable cause. *United States v. Cantu*, 519 F.2d 494, 496 (7th Cir.), *cert. denied*, 423 U.S. 1035, 96 S.Ct. 569, 46 L.Ed.2d 409 (1975); *Au Yi Lau v. Immigration and Naturalization Service*, 445 F.2d at 222. In this case, the circumstances listed *supra* in justification of Spence's interrogation of petitioner, together with his uncoerced admission that he "came from Mexico," constitute a clearly sufficient basis for his warrantless arrest.

■ Considering the record as a whole, we conclude that the findings of the Immigration Judge were supported by reasonable, substantial, and probative evidence. *Woodby v. Immigration and Naturalization Service*, 385 U.S. 276, 282, 87 S.Ct. 483, 486, 17 L.Ed.2d 362 (1966); *Garcia-Jaramillo v. Immigration and Naturalization Service*, 604 F.2d 1236, 1238 (9th Cir. 1979); *Lavoie v. Immigration and Naturalization Service*, 418 F.2d 732, 735 (9th Cir. 1969); *Cordon de Ruano v. Immigration and Naturalization Service*, 554 F.2d 944, 947 (9th Cir. 1977); *Trias-Hernandez v. Immigration and Naturalization Service*, 528 F.2d at 370; 8 U.S.C. § 1105a(a)(4). Once petitioner's alienage was established—as it was by his admission to Officer Spence—the burden of proof shifted to him to prove time, place, and manner of entry. *Hoonsilapa v. Immigration and Naturalization Service*, 575 F.2d 735, 737 (9th Cir.), *modified on other grounds*, 586 F.2d 755 (1978); *Trias-Hernandez v. Immigration and Naturalization*

*Service*, 528 F.2d at 370; 8 U.S.C. § 1361. By his refusal to either testify or offer evidence with respect to those questions, petitioner failed to carry his burden, and the Immigration Judge could properly draw adverse inferences from petitioner's silence. *Cuevas-Ortega v. Immigration and Naturalization Service*, 588 F.2d 1274 at 1278 (9th Cir. 1979); *Hoonsilapa v. Immigration and Naturalization Service*, 575 F.2d at 737; *Chavez-Raya v. Immigration and Naturalization Service*, 519 F.2d 397, 401 (7th Cir. 1975). Thus, we decline to overturn the findings below with respect to the sufficiency of the evidence.

### III. Due Process

Petitioner next asserts that the INS failed to comply with one of its own regulations, 8 C.F.R. § 242.2(e), requiring that the agency inform an alien of his or her right to communicate with consular or diplomatic officials of his or her own country.[4] The government apparently concedes its own noncompliance, but argues that petitioner was in no way prejudiced thereby and hence that any error on its part was harmless.

In *United States v. Calderon-Medina*, 591 F.2d 529, 531 (9th Cir. 1979), this court held that "[v]iolation of a regulation renders a deportation unlawful only if the violation prejudiced the interests of the alien which were protected by the regulation." In considering a violation of precisely the same regulation claimed to have been violated in this case, we stated as follows:

> The district courts in these cases made no finding of specific harm to these aliens resulting from lack of notice of their right to communicate with the Mexican Consul. Nor did appellees identify evidence of such harm in the record. Therefore, we reverse the orders dismissing the indictments.

---

4. Section 242.2(e) of Title 8 of the Code of Federal Regulations provides, in pertinent part, as follows:

   (e) *Privilege of communication.* Every detained alien shall be notified that he may communicate with the consular or diplomatic officers of the country of his nationality in the United States. Existing treaties require immediate communication with appropriate consular or diplomatic officers whenever nationals are detained in exclusion of (sic) expulsion proceedings, whether or not requested by the alien, and, in fact, even if the alien requests that no communication be undertaken in his behalf: * * * Mexico * *.

On remand the aliens should be allowed the opportunity to demonstrate prejudice resulting from the INS regulation violations. The district courts will determine whether violations of 8 C.F.R. § 242.2(e) harmed the aliens' interests in such a way as to affect potentially the outcome of their deportation proceedings.

*Id.* at 532.

■ Although we might be inclined to remand this case for the purpose stated in *Calderon-Medina*, it is an established principle that this court does not sit as an administrative agency for the purpose of factfinding in the first instance, and if a petitioner wishes to preserve an issue for appeal, he must first raise it in the proper administrative forum. *Der-Rong Chour v. Immigration and Naturalization Service*, 578 F.2d 464, 468 (2d Cir. 1978); *Cisternas-Estay v. Immigration and Naturalization Service*, 531 F.2d 155, 160 (3d Cir. 1976); *Leung v. Immigration and Naturalization Service*, 531 F.2d 166, 168 (3d Cir. 1976); *Chi Sheng Liu v. Holton*, 297 F.2d 740, 744 (9th Cir. 1961); *Chung Young Chew v. Boyd*, 309 F.2d 857, 861 (9th Cir. 1962). There is nothing in the record of this case suggesting that petitioner, who has at all times been represented by counsel, raised the question of noncompliance by the INS with its consular communication regulation before either the Immigration Judge or the Board of Immigration Appeals. Petitioner's failure to raise this issue below is significant because the factual record necessary to proper review by this court can only be made by the Immigration Judge. Therefore, in the absence of any reason justifying petitioner's decision to raise for the first time in this court the issue of the alleged failure of INS to comply with 8 C.F.R. § 242.2(e), we conclude that his failure to exhaust administrative remedies on this issue precludes our consideration of it at this stage of the proceedings.

■ Petitioner contends finally that he was denied due process by the failure of the Immigration Judge to require a Spanish language transcription of the record and to permit simultaneous translation of the testimony offered against him. Although we do not believe that dual language transcription of the record was required, the inexplicable refusal of the Immigration Judge to permit simultaneous translation of the testimony against petitioner by either the official interpreter or petitioner's counsel seems unquestionably to be an abuse of his discretion. It is true, as the government points out, that deportation proceedings have been deemed civil in nature, rather than criminal, and hence that all the due process protections accorded to a defendant in a criminal proceeding do not apply in this context. *Abel v. United States*, 362 U.S. 217, 237, 80 S.Ct. 683, 696, 4 L.Ed.2d 668 (1960); *Whetstone v. Immigration and Naturalization Service*, 561 F.2d 1303, 1306 (9th Cir. 1977). It is equally well established, however, that when an alien is charged with having entered the United States illegally, he or she is entitled to a full and fair hearing prior to deportation, *Wong Yang Sung v. McGrath*, 339 U.S. 33, 49–51, 70 S.Ct. 445, 454, 94 L.Ed. 616 (1950); *Garcia-Jaramillo v. Immigration and Naturalization Service*, 604 F.2d at 1239, and this court and others have repeatedly recognized the importance of an interpreter to the fundamental fairness of such a hearing if the alien cannot speak English fluently. *See Niarchos v. Immigration and Naturalization Service*, 393 F.2d 509, 511 (7th Cir. 1968); *Ramirez v. Immigration and Naturalization Service*, 550 F.2d 560, 565 n. 5 (9th Cir. 1977); *Orozco-Rangel v. Immigration and Naturalization Service*, 528 F.2d 224 (9th Cir. 1976); *Leung v. Immigration and Naturalization Service*, 531 F.2d at 168; *Haidar v. Coomey*, 401 F.Supp. 717, 720 (D.Mass.1974). Where, as here, the official interpreter was present at the hearing in order to translate petitioner's own testimony and petitioner's counsel offered to assist if necessary, the Immigration Judge's denial of the request for simultaneous translation of Officer Spence's testimony was plainly improper.

■ Faced with such an abuse of discretion, this court would, as a general rule, feel compelled to reverse and remand this case

for a new hearing. Limited to the specific circumstances of this case, however, including, in particular, the fact that the untranslated testimony only confirmed petitioner's own admission of alienage, we conclude, albeit reluctantly, that the Immigration Judge's error was harmless and that a new hearing would be no more than a futile gesture.

Accordingly, for the reasons set forth above, the decision of the Board of Immigration Appeals is affirmed.

FERGUSON, Circuit Judge, dissenting:

I must dissent.

It is well established that the due process clause of the fifth amendment applies in deportation proceedings and requires that an alien be granted a full and fair hearing. *Ramirez v. I&NS*, 550 F.2d 560, 563 (9th Cir. 1977). Unless the statutory requisites[1] for such hearings have been satisfied, an alien has not received the due process protection to which he is entitled. *Bridges v. Wixon*, 326 U.S. 135, 154, 65 S.Ct. 1443, 1452–1453, 89 L.Ed. 2103 (1945); *Hirsch v. I&NS*, 308 F.2d 562, 566–67 (9th Cir. 1962). The ma-

jority notes the due process requirement, and points out that "this court and others have repeatedly recognized the importance of an interpreter to the fundamental fairness of such a hearing if the alien cannot speak English fluently." The majority implicitly acknowledges[2] that the denial of Tejeda-Mata's request for an interpreter constituted a denial of due process, but it holds that the denial was harmless. I submit that a denial of due process which is as fundamental as the denial here is not subject to review for harmless error. Furthermore, even if the harmless error standard were appropriate here, the error at issue was undoubtedly harmful.

I.

The majority cites no authority to support its application of the harmless error standard here. That omission is not wholly surprising, because the denial of an interpreter[3] should fall within that category of violations which are exempted from the application of the harmless error rule by the Supreme Court's holding in *Chapman v.*

1. *See* 8 U.S.C. § 1252(b), which provides in pertinent part:

   Determination of deportability in any case shall be made only upon a record made in a proceeding before a special inquiry officer, at which the alien shall have reasonable opportunity to be present, unless by reason of the alien's mental incompetency it is impracticable for him to be present, . . . . Proceedings before a special inquiry officer acting under the provisions of this section shall be in accordance with such regulations, not inconsistent with this chapter, as the Attorney General shall prescribe. Such regulations shall include requirements that—

   (1) the alien shall be given notice, reasonable under all the circumstances, of the nature of the charges against him and of the time and place at which the proceedings will be held;

   \*  \*  \*  \*  \*  \*

   (3) the alien shall have a reasonable opportunity to examine the evidence against him, to present evidence in his own behalf, and to cross-examine witnesses presented by the Government; . . . .

2. The majority correctly notes that an alien is "entitled to a full and fair hearing prior to deportation," but fails to point out that this right is derived from the due process clause.

*See, e. g., Ramirez v. I&NS, supra,* 550 F.2d at 563: "Constitutional due process requirements under the Fifth Amendment are satisfied by a full and fair hearing." When the majority points out this court's recognition of the "importance of an interpreter to the fundamental fairness" of deportation hearings involving non-English speaking aliens, it thus acknowledges that a hearing cannot comport with due process absent simultaneous translation. The majority's conclusion that the immigration judge's refusal to allow translation was "plainly improper" merely represents its implicit application of this due process requirement to the facts of this particular case.

3. In holding that due process required simultaneous translation in this case, this court would not have to decide whether the government must provide an interpreter at its own expense. An official interpreter was already present in the courtroom to translate Tejeda-Mata's testimony for the court. In addition, Tejeda-Mata's counsel offered to translate for his client but was denied permission. No further expenditure would have accrued had the judge allowed Tejeda-Mata the same right he enjoyed himself—the right to fully understand and participate in the proceeding.

*California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). In *Chapman,* the Court recognized that "there are some constitutional rights so basic that their infraction can never be treated as harmless error." *Id.* at 23, 87 S.Ct. at 827–828. An alien's right to understand the proceedings against him must fall within this category, for without this understanding, the rights to be present, to examine evidence, and to cross-examine—all of which are guaranteed to an alien by statute—are rendered meaningless. *See* 8 U.S.C. § 1252(b); *Hirsch v. I&NS, supra,* 308 F.2d at 566–67. I am certain that the majority would never have allowed the immigration judge's decision to stand had Tejeda-Mata not been allowed to be present at the deportation hearing. Yet, refusal to allow simultaneous translation effectively denied Tejeda-Mata that very right. Presence can have no meaning absent comprehension. The right to understand must, then, fall into that category of rights so fundamental that their denial cannot be characterized as harmless. *See Chapman v. California, supra,* 380 U.S. at 23, 87 S.Ct. at 827–828.

Furthermore, this court has previously indicated its concern over the absence of adequate translation at deportation hearings. In *Chung Young Chew v. Boyd,* 309 F.2d 857 (9th Cir. 1962), we held that reopened hearings could not provide a basis for a deportation order because the petitioner's due process rights had been violated at the initial (1954) hearing. The record of that first hearing revealed that the petitioner had not been advised of his right to counsel and was not provided with the services of an interpreter. On review, the Board of Immigration Appeals held that the evidence adduced at the 1954 hearing had been improperly considered at subsequent proceedings. That evidence was not probative, it held, since that hearing failed to comply with the provisions of 8 U.S.C. § 1252(b), which requires, in part, that the

alien have a reasonable opportunity to be present, that he be given notice of the charges against him, that he have the privilege of being represented by counsel, that he have a reasonable opportunity to examine the evidence against him and to cross-examine witnesses.[4] *Id.* at 862. On subsequent review by this court, we explained that the Board's finding of lack of compliance with § 1252(b) referred "to the failure to inform petitioner at the 1954 hearing that he was entitled to counsel and to the failure to ascertain his ability to understand English, no interpreter being present." *Id.* at 862 n. 12. The failure to reintroduce crucial evidence "at a hearing in which petitioner had been accorded due process," *id.* at 863, we held, required that the deportation order be set aside.

In *Orozco-Rangel v. I&NS,* 528 F.2d 224 (9th Cir. 1976), we noted the *presence* of an interpreter at a deportation hearing in holding that the petitioners were accorded due process. In so holding, we relied on the presence of an official interpreter whose services were provided to the aliens, and on counsel's fluency in Spanish and his assistance in translation. *Id.* Significantly, we found it necessary to point out these factors despite our conclusion that petitioners "admitted the essential charges upon which the [deportation] orders were based." *Id.*

Other circuit courts have also stressed the importance of simultaneous translation in ruling on cases similar to the case below. *Niarchos v. I&NS,* 393 F.2d 509 (7th Cir. 1968), is illustrative of these courts' reactions to the absence of interpreters at deportation proceedings involving non-English speaking individuals. The *Niarchos* petitioner asked the court to reverse an earlier deportation order because he did not have the services of a qualified interpreter.[5] The court noted that the petitioner was precluded from challenging the validity of the order because he departed the United States

---

**4.** *See* footnote 1, *supra.*

**5.** The existence of the earlier deportation order was significant because it precluded an applica-

tion for re-entry without the Attorney General's permission. *See* 8 U.S.C. § 1182(a)(16).

after its issuance,[6] but it addressed the interpreter issue in dictum in which it recognized the *per se* harm resulting from a failure to provide translation:

We think that the absence of an interpreter at the 1962 hearing is contrary to the aim of our law to provide fundamental fairness in administrative proceedings. Despite the essential discretionary power of the Immigration officials in dealing with violations of the crewman provision . . . it would seem clearly not within the Service's discretion to conduct an official inquiry, without an interpreter, in a language the subject of the inquiry can neither understand nor speak. We therefore in this dictum express the hope that should petitioner seek permission to re-enter, . . . the Attorney General will consider the petition in the light of the shocking circumstances of the 1962 deportation hearing."

*Id.* at 511. The circumstances surrounding the instant case are equally shocking.

The Seventh Circuit also has recognized that the right to counsel in deportation proceedings is "too important and fundamental a right to be circumscribed by a harmless error rule." *Castaneda-Delgado v. I&NS*, 525 F.2d 1295, 1300 (7th Cir. 1975). *Castaneda* involved the denial of the right to counsel as granted by § 1252(b). The court noted that the provisions granting aliens the right to counsel "are an integral part of the procedural due process to which the alien is entitled." *Id.* at 1302. Similarly, the right to be present is an integral part of the due process rights granted aliens by that same statute. The *Castaneda* court was unwilling to eviscerate these provisions by applying the harmless error standard. We would do well to follow their example.

The Second Circuit, like the Seventh Circuit, has held that it would not tolerate the denial of an interpreter to a non-English speaking defendant. In *U.S. ex rel. Negron v. State of New York*, 434 F.2d 386 (2d Cir. 1970), the court affirmed the grant of a petition for habeas corpus by a defendant convicted of murder. At trial, the defendant's testimony was translated into English, but the witnesses' testimony was not translated into Spanish.[7] The court held that the trial lacked the basic and fundamental fairness required by the due process clause. In reaching that conclusion, the court determined that Negron not only was deprived of his right to be confronted by adverse witnesses, but was also effectively deprived of the even more fundamental right to be present. The court explained that if the right to be present is to have any meaning, it must encompass the ability to consult with one's lawyer regarding adverse testimony. *Id.* at 389. In the court's view, these denials were intolerable:

Negron's incapacity to respond to specific testimony would inevitably hamper the capacity of his counsel to conduct effective cross-examination. Not only for the sake of effective cross-examination, however, but as a matter of simple humaneness, Negron deserved more than to sit in total incomprehension as the trial proceeded.

*Id.* at 390. Tejeda-Mata, like Negron, deserved more.

I am, of course, fully aware of the civil nature of deportation proceedings. It is undeniable, however, that deportation hearings are "fraught with serious consequences to the alien." *Castaneda-Delgado v. I&NS, supra,* 525 F.2d at 1301. The Supreme Court has noted that

[t]hough deportation is not technically a criminal proceeding, it visits a great hardship on the individual and deprives him of the right to stay and live and work in this land of freedom. That deportation is a penalty—at times a most serious one—cannot be doubted. Meticulous care must be exercised lest the proce-

---

6. *See* 8 U.S.C. § 1105a(c).

7. Negron did receive summaries of witnesses' testimony. The court recognized, however, that these summaries could not effectively replace simultaneous translation. *Id.* at 389–90.

dure by which he is deprived of that liberty not meet the essential standards of fairness.

*Bridges v. Wixon, supra*, 326 U.S. at 154, 65 S.Ct. at 1452.[8]

There can be no question but that the immigration judge failed to exercise "meticulous care" here. His unwillingness to allow translation deprived Tejeda-Mata of his right to understand and participate in his deportation hearing. As demonstrated above, this court and other courts have stressed the fundamental importance of these rights. Their denial can be nothing other than *per se* harmful.

## II.

Even if the harmless error standard were applicable here, the refusal to allow simultaneous translation into Spanish was not harmless error. As enunciated by the Supreme Court, that standard demands that "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman v. California, supra*, 386 U.S. at 24, 87 S.Ct. at 828. A close reading of the record convinces me that the error here was undoubtedly harmful.

Contrary to the majority's assertions, it is not clear that petitioner admitted alienage. He did admit telling Officer Spence that he was "from Mexico." (R. 33). The immigration judge later characterized this testimony as follows: "He [Tejeda-Mata] testified that he [Officer Spence] asked him where he was born and he said he was born in Mexico." (R. 34). Officer Spence testified that Tejeda-Mata stated before arrest that "he was a Mexican citizen." (R. 49). Neither the judge's characterization nor Spence's testimony was translated into Spanish. In addition, the I–213 form, completed in English by Officer Spence after Tejeda-Mata's arrest and admitted into evidence at the deportation hearing, contains statements which similarly enlarge upon those statements admitted to by petitioner.[9] Tejeda-Mata might have been able to point out these conflicting descriptions of his admission to counsel had he been aware of them, and we cannot properly penalize him for his counsel's failure to observe these conflicting reports. As the *Negron* court emphasized, the inability to respond to testimony inevitably hampers counsel's ability to conduct an effective cross-examination. *U.S. ex rel. Negron v. State of New York, supra*, 434 F.2d at 390.

In his oral decision, the immigration judge concluded that both the petitioner's birth in a foreign country and his Mexican citizenship had been established by his own admission. In reaching these conclusions, the judge clearly relied on Officer Spence's testimony. As a result, the failure to allow Officer Spence's testimony to be translated can hardly be characterized as harmless beyond a reasonable doubt. The majority errs in stating that reversal and remand for a new hearing would amount to no more than a futile gesture; a new hearing is, in fact, an absolute necessity.

I therefore dissent.

---

8. *See also Delgadillo v. Carmichael*, 332 U.S. 388, 391, 68 S.Ct. 10, 12, 92 L.Ed. 17 (1947): "[D]eportation can be the equivalent of banishment or exile."

9. Those comments include an assertion that the petitioner admitted to an illegal presence in the United States. In addition, Mexico is given as the petitioner's country of birth, and a Mexican city is listed as petitioner's permanent residence.