999 F.2d 543
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Jose Dolores MARQUEZ-GONZALEZ, Petitioner,
v.
U.S. IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 90-70593.
 United States Court of Appeals, Ninth Circuit.
 Argued March 10, 1992.
Submission Deferred March 10, 1992.
Resubmitted May 24, 1993.
Decided July 9, 1993.
 
 Before REINHARDT, NOONAN and THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 BACKGROUND
 
 2
 Jose Dolores Marquez-Gonzalez appeals the decision of the Board of Immigration Appeals ordering his deportation. Marquez-Gonzalez is a native and citizen of Mexico, who entered this country without inspection. He came to the United States first in 1977; he has left and returned several times, until his last reentry in 1983. He has remained here continuously since 1983, working as a cook. Marquez-Gonzalez married Wendy M. Heckman, a U.S. citizen, on March 22, 1987. A son, Julian Marquez, was born to them seven months later. Mrs. Marquez cares for Julian, a U.S. citizen, and works a few days a week in a beauty salon.
 
 
 3
 Marquez-Gonzalez was arrested on March 12, 1987. He pled guilty in a California state court on July 10, 1987 to one count of possession of cocaine for sale. Imposition of his sentence was suspended and Marquez-Gonzalez was placed on three years probation with the condition that he serve 90 days in the county jail. His probation appears to have ended in July, 1990.
 
 
 4
 On August 19, 1987, the INS issued an order to show cause charging Marquez-Gonzalez with deportability under section 241(a)(11) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(11), which mandates deportation for one convicted of violating "any law or regulation of a State, the United States, or a foreign country relating to a controlled substance". Marquez-Gonzalez's first hearing before an Immigration Judge was scheduled for September, 1987. Claiming that he never would have accepted a plea agreement in his state conviction if he had been aware of its immigration consequences, Marquez-Gonzalez received a continuance so that he could attempt to set his state court conviction aside.
 
 
 5
 On December 20, 1988, Marquez-Gonzalez appeared before an Immigration Judge. He informed the judge that his effort to set aside his conviction had failed, but that he had begun a state-court collateral attack on his conviction. The judge granted a second continuance of the deportation hearing so that Marquez-Gonzalez could pursue his collateral challenge. Marquez-Gonzalez's final hearing before the judge was on April 28, 1989, when he sought a third continuance. Marquez-Gonzalez had filed a new challenge to his state conviction, a Motion to Terminate Probation, and he sought an additional delay to pursue the matter. The Immigration Judge refused. Marquez-Gonzalez preserved his appeal, conceded deportability and designated Mexico as the country of deportation. The Board of Immigration Appeals affirmed Marquez-Gonzalez's deportation in a decision dated September 12, 1990. His timely appeal followed.
 
 STANDARDS OF REVIEW
 
 6
 The denial of a continuance is reviewed for abuse of discretion. Rios-Berrios v. INS, 776 F.2d 859, 862 (9th Cir.1988).
 
 ANALYSIS
 
 7
 The parties appear to agree that if Marquez-Gonzalez's state court conviction stands, the law demands his deportation. He entered the country illegally. He might well have received a suspension of deportation because of the extreme hardship his deportation would cause his family. See 8 U.S.C. § 1254(a)(1). But because he also committed a drug-related crime, he may not call upon the Attorney General to suspend his deportation. Congress has not granted the Attorney General any discretion to suspend such a deportation. See 8 U.S.C. § 1254(a)(2).
 
 
 8
 Marquez-Gonzalez has a wife, a son and a job in this country. He stands to lose all of them by being deported. The Immigration Judge saw and was moved by these facts. He granted Marquez-Gonzalez two different stays of his deportation proceedings, which together totaled a twenty-month delay, so that Marquez-Gonzalez could attack his state court conviction. We granted an additional continuance for the same purpose. Those efforts never bore fruit. Marquez-Gonzalez has had four and a half years to attack his state court conviction. His order of deportation is itself almost four years old. The Immigration Judge did not abuse his discretion by denying yet another continuance.
 
 
 9
 If Marquez-Gonzalez had any success in challenging his state conviction, he could have reopened his deportation proceeding. See 8 C.F.R. §§ 3.2, 3.8 and 103.5; Wiedersperg v. INS, 896 F.2d 1179, 1181 (9th Cir.1990). The state conviction is still final for immigration purposes and is an adequate basis for an order of deportation. Morales-Alvarado v. INS, 655 F.2d 172, 175 (9th Cir.1981).
 
 
 10
 Marquez-Gonzalez also claims that the Immigration Judge failed to comply with the dictates of 8 C.F.R. § 242.17(a), which mandate that an Immigration Judge inform an alien of his "apparent eligibility for the benefits enumerated" in that section and afford the alien "an opportunity to make application therefor during the [deportation] hearing." The argument is based on Moran-Enriquez v. INS, 884 F.2d 420 (9th Cir.1989), which held that "where the record, fairly reviewed by an individual who is familiar with the immigration laws--as Immigration Judges no doubt are--raises a reasonable possibility that the petitioner may be eligible for relief, the Immigration Judge must advise the alien of this possibility and give him the opportunity to develop the issue." Id. at 423. Marquez-Gonzalez argues that because he had an outstanding challenge to his state court conviction, there was a "reasonable possibility" of his eligibility for relief and the Immigration Judge had a duty to grant a continuance so that he could "perfect that relief".
 
 
 11
 The government offers three arguments in reply. First, this claim was not raised below. The court has no jurisdiction to hear unexhausted, nonconstitutional claims. Vargas v. INS, 831 F.2d 906, 907-08 (9th Cir.1987); Tejeda-Mata v. INS, 626 F.2d 721, 726 (9th Cir.1980), cert denied, 456 U.S. 994 (1982). Second, even if the claim could be heard, it is a transparent failure. The record, "fairly reviewed", discloses that Marquez-Gonzalez was not eligible for any of the benefits enumerated in section 242.17(a): a final state court conviction barred him from any such discretionary relief. The naked hope for relief simply does not make one eligible for that relief. Third, the purpose of section 242.17(a) is to "prompt the Immigration Judge to help an alien explore legal avenues of relief that might not be apparent to him or his attorney." Moran-Enriquez, 884 F.2d at 423. Marquez-Gonzalez was well aware that an alien's deportation could be suspended; but he was equally aware of the legal barriers keeping him from that relief. The Immigration Judge was not required to tell Marquez-Gonzalez what he obviously already knew.
 
 
 12
 The order of the Board of Immigration Appeals is AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3