15 F.3d 1083
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Sandor BARABAS, Petitioner,
v.
IMMIGRATION & NATURALIZATION SERVICE, Respondent.
 No. 92-70282.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 11, 1994.
Decided Jan. 28, 1994.
 
 Before: CHOY, SCHROEDER, and NOONAN, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 I. FACTUAL AND PROCEDURAL BACKGROUND
 
 2
 Sandor Barabas is a Hungarian national who entered the United States on July 15, 1987 as a non-immigrant visitor, authorized to remain until March 1, 1988. On March 3, 1989 he had not yet departed, and the INS served Barabas with an Order to Show Cause, charging him with deportability for having overstayed his non-immigrant visitor visa, under section 241(a)(2) of the Immigration and Nationality Act, 8 U.S.C. Sec. 1251(a)(2).
 
 
 3
 Barabas appeared before the Immigration Judge (IJ) on May 22, 1989. Assisted by counsel, he conceded deportability and stated his intent to apply for asylum. His hearing was continued until October 31, 1989, at which time Barabas testified as to his asylum claim with the aid of an interpreter. Barabas' asylum claim is based on treatment that began in September of 1985, when he returned from a trip to the United States. He claims he was detained and mistreated by officials of the Hungarian Ministry of the Interior due to his connection with a Hungarian dissident named Imre Nagy.
 
 
 4
 Barabas had three hearings before the IJ, each with the aid of a Hungarian interpreter. Near the end of the second hearing, it was only after the IJ had dismissed the interpreter that the IJ realized no testimony had been given yet regarding the possibility of voluntary departure. Barabas and his counsel agreed to give testimony in English, however, Barabas was not able to comprehend the meaning of some questions involving legal terminology. Because of this, the IJ granted Barabas leave to submit a sworn statement regarding voluntary departure.
 
 
 5
 After the October 31, 1989 hearing, it became apparent that Barabas felt the interpreter at that hearing was inadequate. When this was brought to the attention of the IJ, he granted another hearing on November 17, 1989, with a different interpreter. Extensive testimony was given at this hearing, including testimony regarding voluntary departure.
 
 
 6
 In addition, at all three hearings, the IJ and INS counsel confronted Barabas with the political changes that were occurring at that time in Hungary and Eastern Europe. Barabas responded to these assertions, stating he still feared persecution due to communists still holding power at the local level. Exhibits regarding these political changes and their effects were submitted both by the INS and by counsel for Barabas.
 
 
 7
 The IJ found that Barabas did not have a well-founded fear of persecution, and therefore denied his request for asylum. This finding was at least partially based on the political changes in Hungary. He also found that Barabas entered the United States with a preconceived intent to remain, and due to the lack of other factors that outweighed this, he denied Barabas relief in the form of voluntary departure.
 
 
 8
 Barabas timely appealed to the BIA, who also found that Barabas did not have a well-founded fear of persecution, and did not meet his burden of showing he should be granted asylum. The BIA relied heavily upon the political changes in Hungary in making this finding. They also upheld the denial of voluntary departure, based on the same or similar factors as did the IJ. Barabas timely petitioned this court pursuant to 8 U.S.C. Sec. 1105a(a).
 
 II. DISCUSSION
 
 9
 A. The incompetency of the interpreter did not violate Barabas' due process right to a fair trial.
 
 
 10
 Barabas' first contention is that he was denied his right to due process, due to the incompetency of the interpreter at the October 31, 1989 hearing. An alien who is charged with illegally entering or remaining in the United States is entitled to a full and fair hearing, in order to comply with the limited due process rights that attach to a deportation hearing. Wong Yang Sung v. McGrath, 339 U.S. 33, 49-51, modified, 339 U.S. 908 (1950); Tejeda-Mata v. INS, 626 F.2d 721, 726 (9th Cir.1980), cert. denied, 456 U.S. 994 (1982). "[T]his court and others have repeatedly recognized the importance of an interpreter to the fundamental fairness of such a hearing if the alien cannot speak English fluently." Tejeda-Mata, 626 F.2d at 726. The right to an interpreter includes the right to a competent interpreter. "As a sequel to this right, translation services must be sufficient to enable the applicant to place his claim before the judge. A hearing is of no value when the alien and the judge are not understood." Augustin v. Sava, 735 F.2d 32, 37 (2d Cir.1984).
 
 
 11
 Even if the interpreter was in fact incompetent at the hearing held on October 31, 1989, this did not constitute a violation of due process. In order to show a violation of due process, Barabas must show he was not granted a full and fair hearing. Ramirez v. INS, 550 F.2d 560, 563 (9th Cir.1977). In the case at bar, the IJ held an additional hearing when he was informed of Barabas' claim that the interpreter was incompetent. This supplementary hearing served to insure that Barabas receive a full and fair hearing. Any potential due process violation that might have taken place due to an incompetent interpreter at the October 31, 1992 hearing was cured by the supplemental hearing.
 
 
 12
 Barabas goes on to assert that his right to due process was violated because the IJ relied on certain statements at the October 31, 1989 hearing. He attempts to claim that because of the incompetency of the interpreter, the October 31, 1989 testimony should not have been considered at all. This claim is based on a misinterpretation of the law. His error is in the fact that, as explained above, the right to due process involves a full and fair opportunity to be heard. Therefore, an incompetent interpreter would only violate Barabas' due process rights if the incompetency prevented him from fully presenting his claim. As discussed above, that simply was not the case here.
 
 
 13
 As the supplemental hearing satisfied the requirement of a full and fair hearing, what remains is an assertion that the hearing violated INS regulations, by not providing a competent interpreter. 8 C.F.R. Sec. 242.12 states: "Any person acting as interpreter in a hearing before an Immigration Judge under this part shall be sworn to interpret and translate accurately." Even if we accept that the translation was so lacking that it violated the regulation requiring accurate translation, Barabas must still show that he was prejudiced by this violation. "Violation of an INS regulation will only invalidate deportation proceedings where the violation prejudices the interests of the alien." Acewicz v. INS, 984 F.2d 1056, 1062 (9th Cir.1993). Barabas must show that he was somehow prejudiced by the incompetent interpretation.
 
 
 14
 Barabas claims he was prejudiced by the IJ's reliance on the testimony taken on October 31, 1989. However, nowhere does he point to any places where the interpreter made a mistake in translation that might have affected the IJ's determination. Nor does he allege that he was unable to present any testimony because of the incompetent interpreter. In fact, he was given more than ample opportunity to present his evidence by the granting of an additional hearing once the IJ was informed of the problem with the interpreter.
 
 
 15
 Barabas claims that he was prejudiced by the incompetent interpreter because the IJ relied on that testimony in making adverse credibility findings. However, this court reviews the decision of the BIA, not the IJ's decision. Rodriguez-Rivera v. INS, 848 F.2d 998, 1002 (9th Cir.1988). After de novo review, the BIA affirmed the IJ's finding that the factors in Barabas' case did not warrant the discretionary relief of voluntary departure. The BIA did not in any way rely on the credibility findings of the IJ, but rather based it on factors such as Barabas having obtained a false social security card, his short duration of residency, and his lack of humanitarian needs such as family members in the United States. Therefore, Barabas was not prejudiced by the IJ's reliance on the October 31, 1989 hearing.
 
 
 16
 B. There was no error in denying voluntary departure.
 
 
 17
 Barabas' contends that he was denied due process because certain testimony regarding his voluntary departure was taken after the interpreter had been dismissed, and therefore was done in English. This claim lacks merit. First of all, Barabas consented to answer question in English after the interpreter was dismissed. Barabas stated that he understood the IJ, and proceeded to answer questions voluntarily. A problem occurred once the IJ referred to whether Barabas would depart voluntarily, if his ruling was adverse. Barabas misunderstood the questions, and asserted he would like to appeal if the ruling on asylum was against him. However, this problem was cured in two ways. First of all, Barabas was allowed to submit a sworn statement regarding his voluntary departure. In addition, at the supplemental hearing on November 17, 1989, Barabas was allowed to answer further questions through a competent interpreter regarding whether he would voluntarily leave the United States if he were ordered to do so.
 
 
 18
 Barabas claims that he was prejudiced by the fact that the IJ relied upon his testimony given in English in rendering his decision. This claim must also fail for the same reason as the above claim regarding the incompetent interpreter. This court reviews the BIA's decision, not the IJ's decision. Rodriguez-Rivera, 848 F.2d at 1002. The BIA did not rely on Barabas' statements in English in their denial of voluntary departure. Therefore, Barabas was not prejudiced in any way by the testimony which was given in English.
 
 
 19
 Barabas also contends that the BIA erred in upholding the IJ's failure to grant discretionary voluntary departure because the IJ improperly based his decision upon Barabas' intention to appeal his decision. However, examination of the IJ's decision shows that these charges are unfounded. There is no indication here that the IJ considered the fact that Barabas would appeal as an adverse factor in his determination regarding voluntary departure.
 
 
 20
 Barabas also claims that an error occurred regarding one of the adverse factors considered by the IJ. He asserts that the IJ erroneously concluded that Barabas entered the United States with a preconceived intent to remain in the United States. He claims that this conclusion is contrary to the IJ's earlier finding of fact, where the IJ stated that Barabas' state of mind when he arrived in the United States was ambivalent.
 
 
 21
 The IJ's statement concerning the ambivalent state of mind of Barabas, and his determination of a preconceived intention to remain in the United States are not inconsistent. It is possible that the IJ found that Barabas was ambivalent as to how to remain in the United States, since he did not apply for refugee status at that time, but that he had already formed the intention to remain in the United States.
 
 
 22
 There is sufficient evidence in the record to support the IJ's determination that Barabas intended to remain in the United States when he arrived. For instance, at one point the IJ asked Mr. Barabas "[w]hy didn't you think it was a necessity to use your words to file for asylum in 1987 when you got here? When you arrived?" Barabas' response was "[m]y friends suggested it and then they said that if I was able to stay here five years that I would automatically obtain citizenship." This statement by Mr. Barabas would support both the finding of fact that his state of mind was ambivalent (as to how to be able to stay), as well as the conclusion that he had a preconceived intension to remain in the United States.
 
 
 23
 In addition both the IJ and the BIA based their determinations that Barabas had a preconceived intension to remain in the United States on other objective evidence, such as Barabas having obtained a fraudulent social security card, and having obtained employment in the United States. The IJ and the BIA's determination regarding Barabas' state of mind upon arrival in the United States is a factual finding based on credibility and interpretation of testimony, which can only be reversed if it is not supported by substantial evidence. Diaz-Escobar v. INS, 782 F.2d 1488, 1492 (9th Cir.1986). Here, there is ample evidence to support this finding.
 
 
 24
 On the basis of this finding, as well as balancing other relevant factors, the IJ found that Barabas did not merit discretionary relief, and thus did not grant voluntary departure. "[A]dministrative agencies have great latitude in exercising their discretion." Campos-Granillo v. INS, No. 92-70335, slip op. 13725, 13732 (9th Cir. December 8, 1993). This court reviews the denial of the granting of discretionary relief by the IJ for abuse of discretion. Yepes-Prado v. INS, No. 91-70114, slip op. 12801, 12809-10 (9th Cir. November 12, 1993). The IJ looked at the negative factors and examined for any positive factors, but found that discretionary voluntary departure was not warranted. This was not an abuse of discretion.
 
 
 25
 C. The BIA did not err in denying asylum.
 
 
 26
 Barabas argues that the BIA and the IJ erred in failing to appreciate the fact that Barabas was a victim of past persecution. He claims that his treatment at the hands of the Hungarian Ministry of the Interior met the definition of "persecution" that this court gave in Desir v. Ilchert, 840 F.2d 723, 726-27 (9th Cir.1988) and Kovac v. INS, 407 F.2d 102, 107 (9th Cir.1969), and therefore he necessarily met the threshold eligibility requirements for asylum under Sec. 208(a) of the Immigration and Nationality Act, 8 U.S.C. Sec. 1158(a). He claims that the IJ failed to consider this conduct as past prosecution.
 
 
 27
 Except in the exceptional case where the BIA fails to conduct the required de novo review, this court reviews only the decision of the BIA, not the decision of the IJ. Rodriguez-Rivera, 848 F.2d at 1002. The Administrative Record shows that the BIA did in fact assume the past prosecution of Barabas, and that he had a well-founded fear of persecution at the time he left, but that he no longer had a basis for a well-founded fear of prosecution by the Hungarian government due to the changes in Hungary since he left. The BIA denied Barabas' request for asylum not by failing to find past persecution, but by exercising its discretion based on these changes.
 
 
 28
 We review the Attorney General's ultimate decision to grant or deny asylum for an abuse of discretion. Berroteran-Melendez v. INS, 955 F.2d 1251 (9th Cir.1992). The BIA's factual determination that an alien had failed to meet his burden of showing a well-founded fear of prosecution will be upheld if it is supported by substantial evidence. Id. In this case, the BIA based its decision on the changes that have taken place in Hungary. These changes constitute substantial evidence that Barabas did not have a well-founded fear of persecution. Therefore, the BIA did not abuse its discretion in failing to grant asylum.[1]
 
 
 29
 This leads to Barabas' final contention, that the BIA violated Barabas' due process right by taking administrative notice of political changes in Hungary without providing Barabas with the opportunity to show that he still has a well-founded fear of prosecution despite these changes. Barabas cites this court's decision in Castillo-Villagra v. INS, 972 F.2d 1017 (9th Cir.1992), where we held that it was a violation of due process for the BIA to take administrative notice of events that occurred in Nicaragua subsequent to the petitioner's hearing before the IJ, without giving any warning to the petitioner of its intent to do so, or any opportunity to rebut the assertion that these changes negated any well-founded fear of persecution that petitioners may have had. Id. at 1028-29. This court also held that the INS taking of administrative notice is reviewed for abuse of discretion, as is whether it is necessary to warn that such notice will be taken. "The agency's discretion must be exercised in such a way as to be fair in the circumstances." Id. at 1028.
 
 
 30
 Barabas' claim of a due process denial must fail because he had adequate warning that the BIA would take administrative notice of the political changes in Hungary to provide him with an adequate opportunity to rebut the implications of any such changes. First, the IJ noted the changing circumstances in all three of the administrative hearing held before him. Then, the IJ based his decision in part on these changes. Both the INS and Barabas submitted evidence and testimony regarding these changes to the IJ for consideration.
 
 
 31
 More significantly, Barabas' attorney presented a rebuttal argument to the effects of the changes in Hungary in her brief to the BIA. The BIA's administrative notice of the political changes in Hungary and Eastern Europe was not an unforeseen occurrence in this case, as it was in Castillo-Villagra. The Administrative Record contains evidence submitted both by the INS and Barabas as to the effects of such changes. Therefore, Barabas was not denied the opportunity to show that he still has a well-founded fear despite these changes.
 
 
 32
 This court was presented with a similar situation in Acewitz v. INS, 984 F.2d 1056 (9th Cir.1993). In that case, the BIA took administrative notice that the Communists no longer exclusively controlled Poland and that the Solidarity organization had entered into the coalition government. This court held that administrative notice was not improper, distinguishing the facts from Castillo-Villegra. "Because petitioners did in fact introduce evidence before the immigration judge on the effect of the change of government, their position is unlike that of petitioners in Castillo-Villegra, who were deprived of that opportunity." Id. at 1061. In the case at bar, Barabas also presented evidence to the IJ and the BIA regarding the changes in Hungary, so the BIA's action in taking administrative notice did not violate due process.
 
 
 33
 Barabas presented his rebuttal, but the BIA still concluded that Barabas lacked a well-founded fear of persecution. Therefore, the BIA did not abuse its discretion in taking administrative notice of the events, or in finding no well-founded fear of persecution.
 
 
 34
 PETITION DENIED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Because we find that the BIA did not abuse its discretion in finding that Barabas failed to meet his burden of a well-founded fear of persecution required for asylum, we need not address whether Barabas would meet the more stringent standard of a clear probability of persecution required for withholding of deportation. Berroteran-Melendez, 955 F.2d at 1258