**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

SAWDATU PARKER,
Petitioner,

v.

U.S. IMMIGRATION & NATURALIZATION
SERVICE,
Respondent.

No. 97-1740

On Petition for Review of an Order
of the Board of Immigration Appeals.
(A71-796-767)

Submitted: February 10, 1998

Decided: February 26, 1998

Before NIEMEYER and HAMILTON, Circuit Judges, and
HALL, Senior Circuit Judge.

_____

Petition denied by unpublished per curiam opinion.

_____

**COUNSEL**

Randall L. Johnson, JOHNSON & ASSOCIATES, Arlington, Vir-
ginia, for Petitioner. Frank W. Hunger, Assistant Attorney General,
Civil Division, Brenda E. Ellison, Senior Litigation Counsel, Karen
A. Herrling, Office of Immigration Litigation, UNITED STATES
DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Sawdatu Parker petitions for review of a final order of the Board
of Immigration Appeals (Board) denying her application for asylum
and withholding of deportation. Because substantial evidence sup-
ports the Board's decision, we deny the petition.

The Immigration and Nationality Act (Act) authorizes the Attorney
General, in her discretion, to confer asylum on any refugee. See 8
U.S.C. § 1158(a) (1994). The Act defines a refugee as a person
unwilling or unable to return to his native country"because of perse-
cution or a well-founded fear of persecution on account of race, reli-
gion, nationality, membership in a particular social group, or political
opinion." 8 U.S.C. § 1101(a)(42)(A) (1994); see M.A. v. INS, 899
F.2d 304, 307 (4th Cir. 1990) (in banc).

The "well-founded fear of persecution" standard contains both a
subjective and an objective component. An applicant may satisfy the
subjective element by presenting "`candid, credible, and sincere testi-
mony' demonstrating a genuine fear of persecution." Berroteran-
Melendez v. INS, 955 F.2d 1251, 1256 (9th Cir. 1992); see Figeroa
v. INS, 886 F.2d 76, 79 (4th Cir. 1989). The objective element
requires a showing of specific, concrete facts that would lead a rea-
sonable person in like circumstances to fear persecution. See
Huaman-Cornelio v. Board of Immigration Appeals, 979 F.2d 995,
999 (4th Cir. 1992).

The standard for withholding of deportation is more stringent than
that for granting asylum. See INS v. Cardoza-Fonseca, 480 U.S. 421,
431-32 (1987). To qualify for withholding of deportation, an appli-
cant must demonstrate a "clear probability of persecution." Id. at 430.
We must uphold the Board's determination that Parker is not eligible
for asylum if the determination is "supported by reasonable, substan-

2

tial, and probative evidence on the record considered as a whole." 8 U.S.C. § 1105a(a)(4) (1994) (current version at 8 U.S.C.A. § 1252(b)(4) (West Supp. 1997)). We accord the Board all possible deference. See Huaman-Cornelio, 979 F.2d at 999. The decision may be "reversed only if the evidence presented by[Parker] was such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed." INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992).

Sawdatu Parker, a native and citizen of Sierra Leone, entered the United States as a non-immigrant visitor on July 16, 1989, with authorization to remain in the United States for a temporary period to last no later than October 15, 1989. On April 25, 1994, the INS issued an Order to Show Cause to Parker charging her with deportability because she had overstayed her visa. At a deportation hearing, Parker admitted to the five allegations in the Order to Show Cause. Parker requested deportation relief in the form of political asylum, withholding of deportation, and in the alternative voluntary departure. After a hearing, the Immigration Judge (IJ) denied Parker's application for asylum and withholding of deportation, but granted her the privilege of voluntary departure. The IJ found that Parker did not establish that she has a well-founded fear of persecution if she returns to Sierra Leone.

Evidence presented at the asylum hearing established that Parker and members of her family were active in the All People's Congress (APC) government in Sierra Leone. Parker's father participated in APC activities. He served as the head of a government agency and was nominated several times to be the chair of the local constituency in Freetown, Sierra Leone. As chair, his activities included organizing citizens to vote, campaigning for the APC, and holding APC meetings at his home. Parker's father ended his political activities in 1992 when Captain Valentine Strasser of the National Provisional Ruling Council (NPRC) led a successful military coup against the APC government.

Parker testified that her mother also participated in APC activities. Her mother served as the secretary for the women's organization and sponsored many APC party events. In addition, she campaigned on behalf of the APC and encouraged women to vote.

3

Parker also testified regarding her own activities with the APC. She stated that she served as secretary for the APC youth organization from 1985 to 1989, when she entered the United States. As secretary, she organized younger APC members, arranged functions, and talked to younger children about school and education. She testified that she assisted in APC campaigns by talking to youths, encouraging people to vote, and voting in elections. Parker is a member of the Temne Tribe. She stated that she worked on behalf of the Tribe when she participated in APC functions because the Tribe supported the APC government.

Parker had two uncles that were detained and interrogated by the NPRC government. One of the uncles, Alhadji Gerald, was questioned regarding a coup attempt; during his imprisonment, one of his ears was cut off. This uncle was released after the NPRC cleared him of any involvement in the coup. Parker's other uncle, Amadu Kamara, was also detained for two months, and then released, in 1993, by the NPRC. Both of these uncles, as well as Parker's brothers, were killed during attacks in their areas by rebel forces. None of these relatives were specific targets during the attacks.

Parker testified that her parents have never been threatened in any way or arrested. She stated that her parents went into hiding for approximately one year when the NPRC seized power. Her parents immediately returned to Sierra Leone and live in Freetown, but keep a low profile so that they do not draw attention from the NPRC.

At the asylum hearing, Parker was questioned regarding her specific fears about returning to Sierra Leone. She testified that she is afraid that the rebels will do the same things to her that they did to her brothers. She could not predict if anyone in the NPRC government would harm her.

Parker argues that the IJ and the Board erred in concluding that she failed to demonstrate a well-founded fear of persecution based upon her political activity and her relationship to various family members who were politically active and were detained or were victims of rebel attacks.*

_____
*Parker is foreclosed from making an imputed political opinion argument before this court because she failed to present this argument to the

4

Upon our review of the record, we conclude that substantial evidence supports the Board's finding that Parker does not have a well-founded fear of persecution. The record supports the IJ's conclusion that Parker's fear of return is based on the fact that Parkers' relatives were victims of general conditions of violence and upheaval in Sierra Leone, which do not qualify an alien for asylum or withholding of deportation. See M.A. v. INS, 899 F.2d at 315; Matter of Mogharrabi, 19 I&N Dec. 439, 447 (BIA 1987). Parker stated that her parents were prominent and well-known supporters of the APC, yet the NPRC government has not demonstrated an interest in persecuting them. Parker's involvement was far less extensive than that of her parents.

As Parker has not established entitlement to asylum, she cannot meet the higher standard for withholding of deportation. We accordingly deny the petition for review.

We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

PETITION DENIED
_____

BIA. Failure to exhaust administrative remedies regarding an argument precludes an appellant from having this court review the argument for the first time. See 8 U.S.C. § 1105a(c); Tedjeda-Mata v. INS, 626 F.2d 721, 726 (9th Cir. 1980).

5